# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| ANGELICA DIPIERRO, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FLORIDA HEALTH SCIENCES CENTER, INC., d/b/a TAMPA GENERAL HOSPITAL, a Florida corporation, <br><br> Defendant. | Case No.: <br><br> **DEFENDANT'S NOTICE OF REMOVAL** <br><br> [Filed concurrently with Civil Cover Sheet] <br><br> Action Filed:      July 21, 2023 <br> Complaint Served:   July 28, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital ("Defendant" or "TGH"), hereby removes the action filed by Plaintiff Angelica DiPierro ("Plaintiff"), on behalf of herself and all others similarly situated, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-013984, to the United States District Court for the Middle District of Florida. In support of removal, TGH states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.      On July 21, 2023, Plaintiff, on behalf of herself and, purportedly, all others similarly situated, filed a Class Action Complaint (the "Complaint") against TGH in Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-013984 (the "State Court Action").  Plaintiff filed the Complaint as a putative class action.

4.      On July 28, 2023, Plaintiff served TGH with copies of the Summons and Complaint via process server.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by TGH are attached hereto as exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) the docket in the State Court Action (**Exhibit B**); and (3) service documents (i.e., summons and proof of service)

2

and motion to consolidate and related papers filed in the State Court Action (**Exhibit C**).

5.     No other pleadings or documents (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

6.     This removal is timely because TGH filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.     <u>Basis of Original Jurisdiction</u>.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).

8.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a),

TGH may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

## THE ACTION IS PLED AS A CLASS ACTION

9.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332 (d)(1)(B); *Lowery*, 483 F.3d at 1199 n. 35.

10.      Plaintiff brings this action as a "class action" and seeks class certification under Federal Rule of Civil Procedure 23.  [Compl., ¶ 117.]  Because Plaintiff brings this a class action pursuant to Federal Rule of Civil Procedure 23, the first CAFA element is satisfied.  [*Id.* ("Pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of herself and on behalf of all members of the proposed Nationwide Class and Florida Subclass . . .").]

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiff alleges that, "on or around May 31, 2023, Defendant detected unusual activity on its computer systems and ultimately determined that an unauthorized third party accessed the network and obtained certain files from its systems between May 12 and May 30, 2023," (the "Data Incident"), which resulted in the alleged compromise of Private Information[1] of approximately 1.2 million individuals, including Plaintiff [Compl., ¶¶ 2–5.]  Plaintiff further alleges that the Data Incident occurred as a result of TGH's alleged "failure to safeguard . . . highly sensitive Private Information."  [*Id.* at ¶ 6.]

12.     Based on these allegations, Plaintiff asserts four causes of action against TGH: (1) negligence, (2) negligence *per se*, (3) breach of implied contract; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 *et seq.* [*See generally,* Compl.]

13.     Furthermore, Plaintiff purports to bring these four causes of action on behalf of herself and a Nationwide Class (the "Nationwide Class") and a Florida Subclass ("Florida Subclass," and with the Nationwide Class, the "Classes").  [*Id.* at ¶ 117.]  Plaintiff defines the Nationwide Class as: "All individuals residing in the United States whose Private Information was accessed and/or acquired by an

---

[1] Plaintiff defines "Private Information" as "Personally Identifiable Information ('PII') and Protected Health Information ('PHI')" of patients."  [Compl., ¶ 1.]

unauthorized party as a result of the [Data Incident] reported to have occurred on or about May 12, and May 30, 2023," and the Florida Subclass as "All individuals residing in the State of Florida whose Private Information was accessed and/or acquired by an unauthorized party as a result of the [Data Incident] reported to have occurred on or about between May 12 and May 30, 2023." [*Id.*]

14.     Further, although Plaintiff alleges that the exact number of members in the Classes are "identifiable within Defendant's records," she states that approximately "1.2 million individuals were affected by the Data [Incident."]  [*Id.* at ¶ 120; *see also id.* at ¶ 5 ("Defendant's investigation concluded that the Private Information compromised in the Data [Incident] included Plaintiff's and approximately 1.2 million other individuals' information.").]

15.     To date, TGH has mailed notification to approximately 1,314,425 people, the vast majority of whom reside in the United States.

16.     Based on the above, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla.

Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member [i]s a citizen of a state other than [that of defendant] at the time of removal").

18.      <u>Defendant's Citizenship</u>.   Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  *See also RVRoof.com, Inc. v. Ariz. RV Specialist, LLC*, Case No. 3:19-cv-674-J-34MCR, 2019 WL 2452824, at *2 (M.D. Fla. June 12, 2019) (quoting 28 U.S.C. § 1332(c)(1)). "A corporation's principal place of business is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center."  *Cohen v. Burlington*, No. 22-13222, 2023 WL 4364499, at *3 n. 2 (11th Cir. July 6, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)); *see also Tavares v. Pelican Int'l, Inc.*, Case No. 3:22-cv-554-MMH-MCR, 2022 WL 1619172, at *2 (M.D. Fla. May 23, 2022).   "In practice, this normally is 'the place where the corporation maintains its headquarters[.]'" *Tavares*, 2022 WL 1619172, at *2 (quoting *Hertz*, 559 U.S. at 93); *see id.* ("A corporation's headquarters is normally . . . its principal place of business.").

19.      As alleged in the Complaint, TGH is a private corporation with headquarters in Florida.   [Compl., ¶ 18 (stating that TGH is a "Tampa, Florida-headquartered private not-for-profit hospital[.]").]   Accordingly, pursuant to *Hertz*'s nerve center test, TGH has its principal place of business, *i.e.*, its headquarters, in

Florida. Specifically, TGH's headquarters are located at 1 Tampa General Circle, Tampa, Florida 33606.[2]   Further, TGH is organized under the laws of Florida. Accordingly TGH is a citizen of Florida for purposes of CAFA.

20.      <u>Plaintiff's and the Putative Classes' Citizenship</u>.   For diversity purposes, an individual is a "citizen" of the state in which he or she is domiciled. *Arnold v. Leavy Bros. Moving & Storage, Inc.*, Case No. 3:22-cv-427-BJD-JBT, 2023 WL 2347488, at * 1 (M.D. Fla. Mar. 3, 2023) (citing *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)).   "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *Smith*, 991 F.3d at 1149 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)). Said differently, "domicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state." *Id.*   "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*

21.      Here, Plaintiff alleges in the Complaint that she "is, and at all times

---

[2] *See* Hospital Contact Information, https://www.tgh.org/about-tgh/contact-us (last visited August 13, 2023).

mentioned [in the Complaint] was, an individual resident of Hillsborough County," Florida. [Compl., ¶ 11.] Absent other allegations of citizenship, it is unclear whether Plaintiff is a *citizen* of the state of Florida. *See Smith*, 991 F.3d at 1149 ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citing *Travaglio*, 753 F.3d at 1269); *see also Telari Mgmt. FZC, LLC v. Vasilyev*, CASE NO: 23-80640-CV-MIDDLEBROOKS, 2023 WL 3778256, at *1 (S.D. Fla. Apr. 20, 2023) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence.") (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011)). However, even assuming Plaintiff is a citizen of Florida for purposes of CAFA, the putative Nationwide Class she seeks to represent is much broader and more expansive geographically. For example, Defendant sent notifications of the Data Incident to people with addresses in all 50 states and the District of Columbia. And, of course, while "residency does not equate to citizenship," *id.* at 1157 (citing *Travaglio*, 735 F.3d at 1269), in this case, where only one putative class member must reside and intend to remain in a state other than Florida, it is more likely than not that at least one of the approximately 1,314,425 putative class members is a non-Florida citizen.

22.     Accordingly, as established above, "minimal diversity" of citizenship exists pursuant to CAFA because TGH is a citizen of the State of Florida, and it is more likely than not that at least one of the approximately 1,314,425 putative

class members is a citizen of a state other than Florida.

23.     Furthermore, Plaintiff cannot meet her burden to show, let alone demonstrate, that CAFA's "home state" or "local controversy exception" applies. *See Alvarez v. Loancare LLC*, Case No. 20-21837-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (citing *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017)).

24.     Under the "home state" exception to CAFA, "a district court must 'decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Day*, 2020 WL 5758003, at *5 (citation omitted).  Similarly, the "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).  "Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-third of the proposed plaintiff classes, and the action was originally filed in that same state." *Alvarez*, 2021 WL 184547, at *6.

25.     With over 1,314,425 putative class members with addresses in all

50 states, there simply is no way to know who is a citizen of any state without speaking directly to each of those 1,314,425 individuals. *See Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says"). This is especially true here, where "citizens of other states may live part of the year in Florida . . . , but maintain a permanent residence elsewhere." *Id* at 1158. Further exacerbating this problem is the nature of the putative class here, many of whom may have visited TGH only for a one-off or temporary hospital visit while visiting or temporarily residing in Florida.

26.     In short, because at least one putative class member is likely a citizen of a state other than Florida, "minimal diversity" is established pursuant to CAFA, and no evidence exists to suggest any of the exceptions to CAFA apply.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[3]

27.     Where a complaint does not specify the amount of damages sought,

---

[3] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B); *Penton v. Centennial Bank*, Case No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *3 (N.D. Fla. July 30, 2021) (citing *Fed. Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).   The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).   "The goal is to determine 'what the controversy is in the case, not how much plaintiffs are ultimately likely to recover as a result of the lawsuit.'" *Penton*, 2021 WL 8014675, at *3 (quoting *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020)).   "Accordingly, dismissal is appropriate only if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"   *Id.* (quoting *McKinnon Motors, LLC*, 329 F.3d at 807).   Furthermore, in determining the amount in controversy, the claims of all Plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000, *Topalli v. PetSmart, LLC*, Case No.: 6:22-cv-1670-WWB-EJK, 2023 WL 2928301, at *1 (M.D. Fla. Apr. 13, 2023) (citation omitted), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*,

568 U.S. 588, 592 (2013) (citation omitted).

28.      Here, Plaintiff seeks damages, including, but not limited to, attorneys' fees; actual, statutory, nominal, and consequential damages; prejudgment interest on all amounts awarded; and "equitable relief enjoining Defendant from engaging in the wrongful conduct complained of [in the Complaint]," as well as injunctive relief.  [Compl., Prayer for Relief.]

29.      As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

30.      Negligence and Negligence _Per Se_ Claims.  As stated above, Plaintiff brings claims for negligence and negligence _per se_.  [Compl., ¶¶ 129–56 (negligence); 157–67 (negligence _per se_).]

31.      Plaintiff alleges that TGH "had a duty of care to use reasonable means to secure and safeguard their computer property—and Class members' Private Information held within it—to prevent to disclosure of the information, and to safeguard their information from theft."  [Compl., ¶ 134.]  Plaintiff also argues that TGH "owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards . .  and to ensure that [TGH]'s systems and networks . . . adequately protected . . . Private Information."  [_Id._ at ¶ 136.]  Plaintiff further alleges that TGH had a duty to "provide fair and adequate computer

systems and data security practices" pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, [*id.* at ¶ 158], as well as a duty pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302d *et seq.*, "to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information," [*id.* at ¶ 159].

32.     Plaintiff further alleges that TGH breached these and other duties, and therefore was negligent, by "failing to use reasonable measures to protect Class members' Private Information," including, but not limited to, by (a) "failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information"; (b) "failing to adequately monitor the security of their networks and system"; and (c) "allowing unauthorized access to Class members' Private Information."  [*Id.* at ¶ 140.]

33.     Plaintiff also claims that TGH's alleged failure to comply with its duties under the FTC Act and HIPAA "to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information" constitutes negligence *per se*.  [*Id.* at ¶ 161.]

34.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages Plaintiff or any of the putative class members allegedly sustained as a consequence of TGH's negligence or negligence *per se*. However, because Plaintiff seeks recovery for time and money spent "checking her

bills and accounts"; "fears for her personal financial security"; and claims she and Class members are "presently at risk and will continue to be at an increased risk of identity theft and fraud for years to come," [*id.* at ¶¶ 112–13, 115], and in fact specifically alleges that the credit monitoring offering TGH provided to certain members of the putative class was "inadequate" because it "fail[ed] to account for the multiple years of ongoing identity theft and financial fraud faced by victims of data breaches," [*id.* at ¶ 49], one option for assigning a value to these damages is through the cost of credit monitoring.

35.    Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month.  For example, LifeLock offers a product, titled Norton360 with LifeLock Advantage, that provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $15.99 per

month if paid annually.[4]  Similarly, both Equifax[5] and Experian[6] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.  Multiplying just the cost of providing <u>one month</u> of credit-monitoring services at $15.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $32,017,655.80 (calculated as: 1,314,425 individuals notified, times 1 month, times $15.99 per month).  And accepting Plaintiff's own allegation as true that "[t]he retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member," [Compl., ¶ 106], this means that providing only <u>one additional year</u> of credit monitoring to all Class members would be well in excess of the $5,000,000 threshold.

36.     Accordingly, Plaintiff's and the putative class members' potential

---

[4] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[5] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[6]*See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited on August 15, 2023).

credit monitoring damages alone far exceed the $5,000,000 CAFA amount-in-controversy jurisdictional amount.   Combined with Plaintiff's other alleged negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

37.    <u>Breach of Implied Contract Claim</u>.  Plaintiff also asserts that TGH breached an implied contract with Plaintiff and putative class members.   [*See* Compl., ¶¶ 168–78.]

38.    Specifically, Plaintiff claims that TGH offered to provide services to its patients, including Plaintiff and putative class members, in exchange for payment, and in return, "Defendant impliedly promised to protect Plaintiff's and Class members' Private Information through adequate data security measures." [*Id.* at ¶ 171.]  Plaintiff asserts that TGH breached its implied agreement with Plaintiff and putative class members "by failing to safeguard such Private Information, violating industry standards necessarily incorporated in the agreement."   [*Id.* at ¶ 174.] As a result, Plaintiff claims she and putative class members sustained "losses and damages," including, but not limited to, (a) risk of identity theft, as "the data stolen in the Data [Incident] has been used and will continue to be used . . . for criminals to exploit Plaintiff and Class members and to profit from their misfortune," [*id.* at ¶ 86]; (b) loss of time spent allegedly mitigating their risk of identity theft and fraud, [*id.* at ¶¶ 87–89]; (c) diminution in the value of their Private Information,

which Plaintiff claims can sell "for as much as $363 per record," [*id.* at ¶¶ 93, 98]; (d) increased risk of future fraud and identity theft "for many years," [*id.* at ¶ 105]; and (e) loss of benefit of the bargain because "Plaintiff and Class members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant," [*id.* at ¶ 107].

39.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Defendant's alleged breach of contract.   Therefore, Defendant does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy.  But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $32,017,655.80.  Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

40.     <u>Claim for Violation of the Florida Deceptive and Unfair Trade Practice Act.</u>  Plaintiff claims that TGH has violated the FDUTPA, Fla. Stat. § 501.204 *et seq*.  [Compl., ¶¶ 179–84.]

41.     Specifically, Plaintiff claims that TGH violated the FDUTPA by representing, directly or indirectly, to Plaintiff and class members that "it would

safeguard their Private Information entrusted to Defendant, including, but not limited to, by undertaking adequate security measures consistent with industry standards, and by adequately training employees." [*Id.* at ¶ 181.] As a result, Plaintiff claims she and class members have "suffered injury and damages as set forth [in the Complaint]." [*Id.* at ¶ 184.]

42. Plaintiff's Complaint again contains no allegations that would support or suggest the amount in "damages" she or any member of the Class allegedly sustained as a result of Defendant's alleged violation of the FDUTPA. Therefore, Defendant does not include in the calculation of the total amount in controversy any alleged violation-of-FDUTPA damages. However, the FDUTPA allows private parties to recover "actual damages, attorney's fees, and court costs." *N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing Fla. Stat. § 501.211(2)). Accordingly, when these damages—permitted and recoverable under law—are combined with the cost of just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the Class, in addition to the other damages Plaintiff claims she and the Class have suffered, the amount in controversy further exceeds CAFA's $5,000,000 threshold. *See, e.g.*, *Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1237 (S.D. Fla. 2011) (CAFA amount-in-controversy requirement met and evident on face of plaintiff's complaint when plaintiff asserted FDUTPA claim involving "at least

hundreds of thousands of persons").

43.     <u>Total Amount in Controversy</u>.  Based on the discussion above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the Cass exceeds the $5,000,000 CAFA threshold.  This amount is further exceeded if the Court accepts as true Plaintiff's assertion that credit monitoring per class member can cost upwards of $200 a year per class member.  [Compl., ¶ 106.]  Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, injunctive or declaratory relief, or attorneys' fees, which, as discussed below, add even more to the total amount in controversy.

44.     <u>Prayer for Other Monetary and Injunctive Relief</u>.  In addition to the damages discussed above, Plaintiff also requests injunctive and other relief for herself and the Class, including, but not limited to:

- "actual, statutory, nominal, and consequential damages, as allowed by law";

- "attorneys' fees, costs, and litigation expenses";

- "prejudgment interest on all amounts awarded";

- "injunctive and other equitable relief necessary to protect the interests of Plaintiff and Class members, including but not limited to an order":

    - "prohibiting Defendant from engaging in the wrongful and unlawful acts described [in the Complaint]";

    - "requiring Defendant to implement and maintain a comprehensive

information security program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class members";

- "requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors";

- "requiring Defendant to audit, test, and train its security personnel regarding any new modified procedures";

- "requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program . . ."; and

- "requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential Private Information . . . as well as the steps affected individuals must take to protect themselves";

- as well as "[s]uch other and further relief as th[e] Court may deem just and proper."

[Compl., Prayer for Relief.] ¶

45.     In certain circumstances, where the value of declaratory or injunctive relief is not too speculative, the value can be considered when determining the amount in controversy. *See Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013). The value of declaratory or injunctive relief is based upon the "value of the object of the litigation." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted). Courts in the Eleventh Circuit consider the "value of the object of the litigation" from the plaintiff's

perspective, *i.e.*, "the monetary value of the benefit that would flow to the plaintiff if the relief [she was seeking] were granted." *Id.* at 1316 (citation omitted).  And under CAFA, courts "aggregate the claims of the individual class members and consider the monetary value that would flow to the entire class if the declaratory [or injunctive] relief were granted." *Id.*

46.     Here, however, no allegations in the Complaint allow Defendants to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, TGH has not included that value in the calculation of the total amount in controversy. Nevertheless, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## **ATTORNEYS' FEES**

47.     When underlying substantive law provides for an award of attorneys' fees, a party may include a "reasonable amount" in its calculation in the amount in controversy.  *McLawhorn v. GEICO Indem. Co.*, Case No. 8:17–cv–156–T–33AEP, 2017 WL 1277744, at *5 (M.D. Fla. Apr. 6, 2017) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).  Here, Plaintiff's FDUTPA claim provides for the award of attorneys' fees to the prevailing party, and such fees are available under FDUTPA in calculating the amount in controversy. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014) ("[T]he Court may consider attorney's fees and costs available under FDUTPA in calculating

the amount in controversy[.]") (citing *McKinnon Motors, LLC*, 329 F.3d at 808 n. 5).

48.     Although only "attorneys' fees incurred up to the time of removal may be included in the amount in controversy" calculation, *McLawhorn*, 2017 WL 1277744, at \*5, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## NOTICE

49.     As required by 28 U.S.C. § 1446(d), TGH is providing written notice of the filing of this Notice of Removal to Plaintiff and are filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital removes the State Court Action from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to U.S. District Court for the Middle District of Florida.

Respectfully submitted,

DATED:  August 17, 2023

**BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*

Julie Singer Brady
Florida Bar No. 389315
Email:   *jsingerbrady@bakerlaw.com*
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Casie D. Collignon (*pro hac vice forthcoming*)
Sarah A. Ballard (*pro hac vice forthcoming*)
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed and served through the Court's ECF system on this 17th day of August, 2023, on all counsel of record.


*/s/ Julie Singer Brady*
Julie Singer Brady