## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANGELICA DIPIERRO, et al.,** on behalf of themselves and all others similarly situated,

**Plaintiffs,**

v.

**FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a TAMPA GENERAL HOSPITAL,** a Florida corporation,

**Defendant.**

**Case No.: 8:23-cv-01864**

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1], individually, and on behalf of the Settlement Class, respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.   INTRODUCTION

This Action concerns a Data Security Incident that occurred at TGH. On or around May 31, 2023, TGH detected unusual activity in its computer systems and ultimately determined an unauthorized third party accessed and obtained certain system files between May 12, 2023, and May 30, 2023. TGH's investigation confirmed

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement and Releases, attached hereto as ***Exhibit A***.

the Data Security Incident included individuals' Private Information, including names, addresses, telephone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations.

Plaintiffs, individually, and on behalf of the Settlement Class, and TGH have entered into a settlement to resolve Plaintiffs' claims on a class-wide basis. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary all cash $7,800,000.00 Settlement Fund and practice changes. The Court should find the Settlement is within the range of reasonableness necessary for this Court to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (vii) establishing procedures and deadlines for Settlement Class members to opt-out and Settlement Class Members to object; and (viii) scheduling a Final Approval Hearing at which time the Court will consider Final Approval of the Settlement, Class certification, and Class Counsel's Application for Attorneys' Fees and Costs.

## II.    BACKGROUND

TGH is a private, not-for-profit hospital headquartered in Tampa, Florida. It is

one of Florida's largest hospitals, with a patient population of over four million people. ECF No. 1, Complaint ("Compl."), ¶ 39. Plaintiffs allege they are patients who provided TGH with their sensitive and confidential Private Information so they could use TGH's services. *Id.* ¶¶ 12, 16, 20, 24, 28, 32, 41. Plaintiffs allege their Personal Information was exposed as a result of the Data Security Incident experienced by TGH. *See id., generally*. Plaintiffs allege TGH failed to use reasonable security procedures and practices appropriate for its patients' sensitive and confidential Private Information. *Id.* ¶ 52. TGH notified the individuals who were impacted by the Data Security Incident, including Plaintiffs. *See id.* ¶¶ 128, 136, 144, 152, 161, 169; *see also* Agreement ¶ 2.

### A.    History of Litigation

Plaintiff DiPierro initiated this first-filed Action against TGH on July 21, 2023, in the 13th Judicial Circuit Court, Hillsborough County. ECF No. 1. Thereafter, 15 Related Actions[2] were filed against TGH that are materially and substantively

---

[2] *Colon, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01909-KMM-CPT (M.D. Fla.), *Ramirez v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01890-KKM-TGW (M.D. Fla.), *Russo v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida corporation*, Case No. 8:23-cv-01757-KKM-CPT (M.D. Fla.), *Wagner v. Florida Health Sciences Center, Inc. doing business as Tampa General Hospital*, Case No. 8:23-cv-01957-KKM-JSS (M.D. Fla.), *Bradds & Testa v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Corporation*, Case No. 8:23-cv-02127-KKM-JSS (M.D. Fla.), *Doe [2] v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Non-Profit Corporation*, Case No. 8:23-cv-02151-KKMUAM (M.D. Fla.), *Ruggiero v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01778-WFJ-AAS (M.D. Fla.), *Robbins v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv- 02170-MSS-AAS (M.D. Fla.), and *Doe [3] v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Non-Profit Corporation*, Case No. 8:23-cv-02072-VMCTGW (M.D. Fla.) are stayed pending the Settlement of this Action. *Borchers v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01728-MSS-AEP (M.D. Fla.), *Andriano v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01745-TPB-TGW (M.D. Fla.), and *Doe 1, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa*

identical, as they have overlapping claims, seek to represent the same putative class (except one individual Related Action), and arise out of the same Data Security Incident. *See* Declaration of Class Counsel ("Decl."), attached as ***Exhibit B***, ¶ 4.

On August 2, 2023, Plaintiff DiPierro filed a Motion to Consolidate Actions, Appoint Leadership Structure, and Set Schedule for Filing of Consolidated Class Action Complaint in the state court action, seeking to, among other things, consolidate the case with two related cases subsequently filed in Hillsborough County. *Id.* ¶ 5. On August 9, 2023, Plaintiff DiPierro served an informal request for documents and information on TGH relating to jurisdictional issues, as well as to prepare for anticipated mediation. *Id.* Plaintiff DiPierro also propounded interrogatories and a request for production of documents on TGH in the state court action. *Id.*

On August 17, 2023, this Action was removed to this Court. ECF No. 1. Thereafter, Plaintiff DiPierro propounded interrogatories and a request for production of documents on TGH in this Action. Decl. ¶ 6.

On August 17, 2023, TGH filed a Notice of Related Actions. ECF No. 2. On August 21, 2023, Plaintiff DiPierro filed a Notice of Related Actions. ECF No. 5. Also, on August 21, 2023, the Parties filed their Certificates of Interested Persons and Corporate Disclosure Statements. ECF Nos. 6, 7.

---

*General Hospital, a Florida Non-Profit Corporation*, Case No. 8:23-cv-01988-KKMAEP (M.D. Fla.) have been dismissed, without prejudice. *Morgan v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-0993-KKM-TGW (M.D Fla.) remains pending before this Court, and *Benck v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Corporation*, Case No. 23-CA-014449 (13th Jud. Cir. Ct., Hillsborough Cty., Fla.) and *Raslavich v. Florida Health Sciences Center, Inc.*, Case No. 23-CA-014923 (13th Jud. Cir. Ct., Hillsborough Cty., Fla.) remain pending in the 13th Judicial Circuit Court, Hillsborough County, Florida.

On August 22, 2023, Plaintiffs filed an Amended Complaint, asserting claims for negligence, negligence *per se*, breach of implied contract and implied covenant of good faith and fair dealing, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* on behalf of a nationwide class and a Florida subclass. ECF No. 8.

On August 25, 2023, the Parties filed a Stipulated Protective Order Regarding Disclosure of Confidential or Highly Confidential Materials and a Stipulation Concerning Protocol for Production of Documents and Electronically Stored Information. ECF Nos. 17, 18. Thereafter, on August 29, 2023, the Parties filed an Agreed Motion for Entry of Stipulated Protective Order Regarding Disclosure of Confidential or Highly Confidential Materials and Parties Stipulation Concerning Protocol for Production of Documents and Electronically Stored Information, which the Court granted on September 6, 2023. ECF Nos. 20, 22.

On September 25, 2023, TGH filed a Motion to Dismiss the Amended Complaint. ECF No. 25.

On September 26, 2023, the plaintiffs in the *Doe 1* Action filed a Notice of Related Case, Notice of Pending Motions to Consolidate and for Appointment of Interim Class Counsel ("Notice of Pending Motions"). ECF No. 26.

On September 26, 2023, the Parties filed a Uniform Case Management Report. ECF No. 27.

On October 2, 2023, Plaintiffs filed a Response to the *Doe 1* Action plaintiffs' Notice of Pending Motions, which included a Motion to Stay Pending the Outcome

of Mediation ("Motion to Stay"). ECF No. 28.

On October 9, 2023, Plaintiffs filed their Opposition to TGH's Motion to Dismiss. ECF No. 29.

On October 10, 2023, Plaintiffs served their Rule 26 Initial Disclosures on TGH. Decl. ¶ 13.

On October 18, 2023, TGH responded to Plaintiff DiPierro's informal discovery requests with substantial documents and written responses. *Id.* ¶ 14.

On October 25, 2023, the Court entered an Order denying Plaintiffs' Motion to Stay (ECF No. 28) as moot. ECF No. 30.

B.    **Mediation and Settlement**

On November 6, 2023, the Parties participated in a full day private mediation before an experienced data breach mediator, Jill R. Sperber of Judicate West. Decl. ¶ 15. In advance of the mediation, TGH provided Class Counsel with information related to the type of data disclosed in the Data Security Incident, the alleged impact to Plaintiffs, and to assist in determining where jurisdiction is appropriate. *Id.* ¶ 16. Additionally, the Parties drafted and exchanged mediation briefs that were submitted to Ms. Sperber. *Id.* The information allowed Plaintiffs and Class Counsel to enter settlement negotiations with substantial information about the facts and merits of the legal claims. *Id.* ¶ 17. Plaintiffs and Class Counsel reviewed key documents and information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* During the

mediation, the Parties thoroughly discussed and vetted the facts and law as Ms. Sperber engaged in a critical analysis of the Parties' arguments. *Id.* ¶ 18. The mediation concluded with the Parties agreeing to the material settlement terms to resolve Plaintiffs' claims and those of the putative class. *Id.* ¶ 19. On November 9, 2023, the Parties filed a Joint Notice of Settlement and Motion to Stay Current Deadlines, which the Court granted on November 13, 2023. ECF Nos. 31, 32. In subsequent weeks, the Parties continued to negotiate the finer points of the Agreement, including the terms of the Releases, the Settlement Administrator and its respective duties, the Notice Program and Notices, Claim process and Claim Form, and proposed schedule of post-settlement events. *Id.* ¶ 20. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. *Id.* The Agreement was executed on December 27, 2023. The Parties did not discuss attorneys' fees and costs until after an agreement had been reached on all material Settlement terms. *Id.* ¶ 21.

## III.   MATERIAL TERMS OF THE SETTLEMENT

**A.   Settlement Class -** Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> [A]ll persons in the United States who were sent notification from TGH that their Private Information was potentially compromised as a result of the Data20 Security Incident that occurred between May 12, 2023, and May 30, 2023, and discovered by TGH on or about May 31, 2023. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff.

Agreement ¶ 51.

**B.     Settlement Fund -** The Settlement provides for a non-reversionary $7,800,000.00 all cash Settlement Fund. *Id.* ¶ 54. The Settlement Fund will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.* ¶ 58.

**C.     Settlement Class Member Benefits -** When submitting a Claim, Settlement Class members must choose a Cash Payment and may also elect to receive Credit Monitoring. *Id.* ¶ 62. Settlement Class Member Benefits may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Settlement Class Member Benefits claimed. *Id.* ¶ 65. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against TGH without receiving a Settlement Class Member Benefit. *Id.* ¶ 62.

**Cash Payments -** Settlement Class Members must elect either Cash Payment A or Cash Payment B. *Id.* Settlement Class Members who elect Cash Payment A may receive compensation for: (a) reimbursement of documented out of pocket ordinary losses up to $1,500.00; (b) reimbursement of documented extraordinary losses up to $10,000.00; and/or (c) compensation of $30.00 per hour for up to six hours for time spent remedying issues related to the Data Security Incident (which may be combined with reimbursement for ordinary losses subject to the $1,500.00 aggregate individual cap). *Id.* ¶ 63. Settlement Class Members who elect Cash Payment B will receive a flat payment in the amount of $150.00. *Id.* ¶ 64.

**Credit Monitoring -** In addition to a Cash Payment, Settlement Class Members

may also make a Claim for two years of Credit Monitoring. *Id.* ¶ 66. The Credit Monitoring is with three bureaus (Experian, Equifax, and TransUnion) and has a value of $90.00 per year per Settlement Class Member. *Id.*

**Practice Changes -** In addition to the Cash Payments and Credit Monitoring outlined above, TGH has also agreed to make data security enhancements to protect Settlement Class members' Private Information. *Id.* ¶ 67.

**D.     Settlement Class Notice -** The Parties have agreed on a comprehensive Notice Program, which includes a Long Form Notice, Postcard Notice, Settlement Website, and Settlement telephone line. *Id.* ¶¶ 35, 55. Postcard Notice shall be disseminated via U.S. Mail to Settlement Class members' mailing addresses, to the extent known. *Id.* ¶ 76. Notice shall also be published on the Settlement Website. *Id.*

Settlement Class members may request a Long Form Notice, review key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.* ¶¶ 55, 72(e), 72(f). The Notice, in forms similar to those attached to the Agreement as Exhibits 1 and 2, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class member opt-out deadline; the deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Approval Hearing date;

and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Application for Attorneys' Fees and Costs at the Final Approval Hearing. *Id.* ¶¶ 77, 79, 80.

  **E.** **Claim Submission Process -** To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* ¶¶ 15, 57. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.* ¶ 85. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of Settlement Class Member Benefit to which the Settlement Class Member may be entitled. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after Final Approval or after the Effective Date, whichever is later. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Credit Monitoring with activation instructions. Greater detail on the Claims process is in Section IX of the Agreement. *See id.* § IX.

  **F.** **Disposition of Residual Funds** – Any funds remaining in the Settlement Fund 20 days after the 180-day check negotiation period shall be distributed to a mutually agreeable *cy pres* recipient to be approved by the Court. *Id.* ¶ 101. The Parties

will propose a recipient when Plaintiffs file their Motion for Final Approval.

     **G.**    **Settlement Administrator** – Epiq Class Action & Claims Solutions, Inc., the proposed Settlement Administrator, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Decl. ¶ 31. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement ¶ 71. The Settlement Administrator's duties include, *inter alia*: (i) providing CAFA Notice; (ii) completing the Court-approved Notice Program; (iii) establishing and maintaining the Settlement Fund Escrow Account; (iv) establishing and maintaining a post office box to receive opt-out requests, objections, and Claim Forms; (v) establishing and maintaining the Settlement Website; (vi) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call; (vii) responding to any mailed Settlement Class member inquiries; (viii) sending an email to Settlement Class Members with Valid Claims that include an election for Credit Monitoring with information on how to enroll in the Credit Monitoring, including the activation code; (ix) processing all opt-out requests from the Settlement Class; (x) providing weekly reports to Class Counsel and TGH's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information; (xi) in advance of the Final Approval Hearing, preparing a declaration to submit to the Court confirming that the Notice Program

was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (xii) distributing, out of the Settlement Fund, Cash Payments by electronic means or by check; (xiii) paying Court-approved attorneys' fees and costs out of the Settlement Fund; (xiv) paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and (xv) any other Settlement Administration function at the instruction of Class Counsel and TGH, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed. *Id.* ¶ 72. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 70.

**H.      Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. *Id.* ¶ 38. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class member who does not timely and validly request to opt-out shall be

bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 79. The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be mailed to the Clerk of the Court, Class Counsel, TGH's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id.* ¶ 80. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each

listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). Class Counsel and/or TGH's Counsel may conduct limited discovery on any objector or objector's counsel. *Id.* ¶ 81.

**I.     Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See* Agreement § XIII. The Released Claims are narrowly tailored and only "result from, arise out of, are based upon, or relate to (a) the Data Security Incident; or (b) any of the alleged violations of laws or regulations cited in the Complaint." *Id.* ¶ 102.

**J.     Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 99. The attorneys' fees and costs will be formally sought in the Application for

Attorneys' Fees and Costs filed within the Motion for Final Approval no less than 45 days before the original date set for the Final Approval Hearing. *Id.* ¶ 97. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 100. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek. *See id.* § VIII.

## V.    ARGUMENT

### A.    The Settlement Class Should Be Certified.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, "[t]he class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable." *DeSouza v. AeroCare Holdings LLC*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5434712, at *2 (M.D. Fla. Aug. 7, 2023), *report and recommendation adopted*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5432302 (M.D. Fla. Aug. 23, 2023) (citations omitted). Plaintiffs must satisfy all Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring  common questions of law or fact to predominate over any individual issues and  class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements

are met for settlement purposes.

      **1.**    **Standing -** A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

      Here, all Plaintiffs have standing because, like the Plaintiffs in *Desue*, their Private Information was allegedly impacted in the Data Security Incident when an unauthorized third party gained access to TGH's system files containing its patients' sensitive and confidential information. Because all Plaintiffs and Settlement Class

members had sensitive Private Information impacted in the Data Security Incident, they have all suffered alleged injuries akin to an invasion of privacy. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The application of this privacy theory to the data breach context was recently confirmed by the Second Circuit, which held that:

> Like the Supreme Court in *TransUnion*, we have no trouble concluding that Bohnak's alleged harm is sufficiently concrete to support her claims for damages. Similar to the publication of misleading information about some of the plaintiffs in *TransUnion*, the core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts. Bohnak's position is thus similar to that of the 1,853 class members who had standing in *TransUnion* based on the publication of misleading information to third parties without regard to whether the third parties used the information to cause additional harm.

*Bohnak v. Marsh & McLennan Cos.*, *Inc.*, 79 F.4th 276, 285–86 (2d Cir. 2023) (internal citation omitted); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1262 (finding consumers had standing to bring action against consumer reporting agency arising out of data privacy breach, where they alleged hackers obtained their personal information, identity thieves could use their information to create fake identities, fraudulently obtain loans and tax refunds, and destroy their credit-worthiness, they remained subject to pervasive, substantial, and imminent risk of identity theft and fraud, some consumers had already suffered actual identity theft and resulting injuries, and other consumers had expended resources to mitigate risk of identity theft). This injury is consistent for all Settlement Class members.

Moreover, it is well established that the lost benefit of a bargain is sufficient to confer standing. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp.

3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that [d]efendants failed to meet their representations about data security,' courts have consistently held these allegations sufficient to allege injuries in fact.") (internal citation omitted); *see also Kostka v. Dickey's Barbecue Rests.*, Inc., No. 3:20-CV-03424-K, 2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) ("The Court finds that the Settling Plaintiffs have properly alleged Article III standing for all potential class members on the basis of their breach-of-an-implied contract claim."), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). This injury applies to all Settlement Class members. Plaintiffs undoubtedly have standing to assert their claims.

**2. Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, Case No: 2:16-cv-41-JLB-MRM, 2021 WL 6105590, at *10–11 (M.D. Fla. Dec. 23, 2021). Here, the

Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification from TGH that their Private Information was potentially compromised as a result of the Data Security Incident. *See* Agreement ¶ 53.

        **3. Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

        **Numerosity -** Class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the joinder of approximately two million Settlement Class Members would certainly be impracticable, and thus numerosity is satisfied. *See DeSouza*, 2023 WL 5434712, at *4 (numerosity met for 32,035 class members).

        **Commonality -** This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Courts in this Circuit have

previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re: Overby-Seawell Co. Customer Data Sec. Breach Litig.*, No. 1:23-MD-03056 (N.D. Ga.) ("*Overby-Seawell*"), ECF No. 88 at 5; *Desue*, 2022 WL 17477004, at *4; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether TGH's security environment was adequate to protect the Settlement Class Private Information. Resolution of that inquiry revolves around evidence that does not vary between members, and so can be fairly resolved—at least for purposes of settlement— for all Settlement Class members at once. Indeed, the Settlement Class members each had their Private Information impacted in the Data Security Incident.

**Typicality -** The commonality and typicality analyses often overlap, as they are both focused on "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1278. Here, there is a nexus between Plaintiffs' and other Settlement Class members' claims since they each concern TGH's alleged failure to protect sensitive Personal Information in connection with the Data Security Incident. Thus, Plaintiffs' claims are typical of other Settlement Class members claims because they are based on the same legal theories and underlying events.

**Adequacy of Representation -** "To determine whether the adequacy requirement is met, we ask: '(1) whether any substantial conflicts of interest exist

between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."' "This 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *DeSouza*, 2023 WL 5434712, at *5 (quotation omitted).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all Settlement Class members, Plaintiffs have claims against TGH arising from the Data Security Incident that allegedly impacted their Private Information. Plaintiffs were similarly allegedly injured by TGH's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement. Decl. ¶ 28.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context. *See* Decl., Ex. 1; *see also* § V(C), *infra*.

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. He has been practicing law for 26 years, the last 13 of which he has focused on class actions. Although Mr. Ostrow has handled a wide array of class actions, ranging from cases

involving improper bank fees, antitrust, product liability, false advertising, insurance, and consumer protection violations, he is regularly appointed lead counsel, co-lead counsel, liaison counsel, and class counsel in class actions involving data privacy and cybersecurity. He is currently serving as lead counsel in one of 2023's largest data breaches involving over eight million victims, *In re Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), and is also involved in nearly 75 other currently pending data breach cases. He is very familiar with this area of law and is keenly aware of how to properly structure a fair, reasonable, and adequate settlement. *See* Decl., Ex. 1.

Kristen Lake Cardoso is a Partner at Kopelowitz Ostrow P.A. She has been practicing law for 16 years, and for the last 3 years, she has focused on class actions. She currently represents plaintiffs in numerous data breach class actions in state and federal courts throughout the country. *See id.*

Plaintiffs' counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving discovery, consulting with data security experts, responding to TGH's motion to dismiss, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Decl. ¶ 25. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**4. Rule 23(b)(3) -** Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing

predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not Inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

**Predominance -** "In reviewing predominance, the court must determine whether the common issues are more prevalent or important than the individual issues." *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-Orl-78EJK, 2020 WL 8254235, at *5 (M.D. Fla. June 5, 2020) (citation omitted). A common question is one that "can be resolved by the same evidence for each class member, or it can be proven by generalized, class-wide proof." *Id.*

Common issues clearly predominate here. This case is like *Desue*, in which the Southern District of Florida held that,

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

*Desue*, 2022 WL 17477004, at *5. Indeed, common factual and legal questions predominate here, based on TGH's alleged failure to safeguard all Settlement Class members' Private Information from unauthorized access. The answers to these key

questions will be the same for each Settlement Class member because all of them had their Private Information impacted in the Data Security Incident. As such, the predominance requirement is readily satisfied.

**Superiority** – The superiority analysis involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class members' claims. *See Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-TPB-AEP, 2021 WL 3500844, at *7 (M.D. Fla. May 4, 2021) ("[G]iven the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation."). Indeed, Courts in this Circuit recognize the superiority of the class mechanism in the context of data breach litigation. *See, e.g., In re: Overby-Seawell*, ECF No. 88 at 6 (finding class action and class settlement superior to other methods available); *Desue*, 2022 WL 17477004, at *5 (finding class treatment superior for settlement purposes).

### B.   The Settlement Should be Preliminarily Approved.

After determining settlement class certification is likely, the Court must then determine whether the settlement is worthy of preliminary approval and providing notice to the settlement class. ""Preliminary approval is appropriate where the

proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *DeSouza*, 2023 WL 5434712, at *3 (quoting *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 661). The court may approve the settlement if it is "fair, reasonable, and adequate" based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2). In addition, courts in the Eleventh Circuit must also consider the following "*Bennett*" factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

### 1.    Rule 23(e)(2) is Satisfied.

**Adequacy of Representation (Rule 23(e)(2)(A))** - As this Court held in *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *1 (M.D. Fla.

Oct. 22, 2019) (Davis, J.):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.* The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

*Id.* at *5 (footnote and additional citation omitted). Here, Plaintiffs are adequate representatives. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. Decl. ¶ 27. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.* Likewise, Class Counsel are experienced in complex class action litigation, including similar data breach actions, and they devoted substantial time and resources to vigorous litigation. *See id.* ¶¶ 24, 25, 29.

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶ 23. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in discovery, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *See id.* ¶¶ 3, 17; *see also Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1115 (M.D. Fla. 2021) ("Class Counsel had an adequate information base upon which to conduct negotiations"). The Settlement

was reached with the assistance of a well-respected and experienced mediator. *See* Decl. ¶¶ 18-19; *See Petersen*, 2019 WL 11093816, at *6 (involvement of a mediator indicates that negotiations protect and further class interests) (quoting Rule 23(e)(2)(B), Committee Notes on Rules–2018 Amendment; citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015)). Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.* ¶ 21. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C))** - Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against TGH poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and Credit Monitoring for all Settlement Class Members. *See In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"); *Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing as weighing in favor of approving settlement). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective.

Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Credit Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Decl. ¶ 31. Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and TGH negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *See also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). Also, the Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee award to Class Counsel. Agreement ¶ 103. Subject to the Court's approval, the proposed attorneys' fees award is also fair. Finally, the Parties' agreements are all in the Agreement. Decl. ¶ 22.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(C))** - All Settlement Class Member are given an equal opportunity to claim Settlement Class Member Benefits under the Settlement. Specifically, each Settlement Class member has the option to be reimbursed for documented losses and lost time as a result of the Data Security Incident, or they can forego those options and obtain a flat cash payment. In addition, they may elect to receive two years of Credit Monitoring.

## 2.   The *Bennett* factors support Preliminary Approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including Cash Payments of at least $150.00 per Settlement Class Member and Credit Monitoring for two years.

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274 (affirming district court's decision finding settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class members may submit Cash Payment A Claims for documented ordinary losses up to $1,500.00 and documented extraordinary losses up to $10,000.00. Agreement ¶ 66. They are also entitled to compensation for time spent remedying issues related to the Data Security Incident (up to six hours at $30.00 per hour, which may be combined with reimbursement for ordinary losses subject to the $1,500.00 aggregate individual cap).

*Id.* Alternatively, Settlement Class members may submit Cash Payment B Claims for a flat $150.00 payment. *Id.* ¶ 67. Settlement Class members may also elect Credit Monitoring. *Id.* ¶ 68. The Settlement Class Member Benefits are more than reasonable when compared to other data breach settlements when considering the type of information at issue and the class size of the class. *Id.* ¶ 26.

Fourth, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. *Id.* ¶ 36. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. Id. ¶ 37.

Fifth, whether there is any opposition to the Settlement is better considered at the Final Approval stage, after Notice has been provided to the Settlement Class and they are given the opportunity to object.

Sixth, despite resolving at an early stage, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery); *Kuhr*, 530 F. Supp. 3d at 1115 (approving settlement early in the litigation without involvement of a neutral mediator). This case has been thoroughly investigated by counsel experienced in data breach litigation. *See* Decl. ¶¶ 3, 17, 24, 34. Moreover, Class Counsel's informal exchange of discovery and mediation with an

experienced mediator has ensured a fair, reasonable, and adequate Settlement. *See id.*

Accordingly, the Court should find that the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

## C.   The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Decl. ¶ 28. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § V(A)(3), *supra*.

Also, for the reasons previously discussed with respect to adequacy of representation, the Court should designate Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are

represented by qualified and competent Class Counsel who are leaders in the class action field and have extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Class Counsel investigated the potential claims against TGH, interviewed potential plaintiffs, and gathered information regarding the Data Security Incident. Decl. ¶ 3. Class Counsel has devoted substantial time and resources to prosecuting this Action and will continue to do so. *Id.* ¶¶ 25, 29.

Finally, the Parties have agreed that Epiq Class Action & Claims Solutions, Inc. shall be the Settlement Administrator. Epiq has a long history of successful administrations in class actions.

### D.   The Notice Program Contains the Best Notice Practicable.

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the

form of the Notices with the help of the Settlement Administrator. The Notice will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from TGH's records, and through databases tracking nationwide addresses and address changes. In addition, Epiq will administer the Settlement Website containing relevant information about the Settlement. Further, the Notice includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Agreement ¶ 78. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *See* Agreement ¶¶ 102. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See* Agreement at Ex. 1, 2.

### E.     Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the following schedule for the Court's review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of June 10, 2024, or such

later date available on the Court's calendar.

| | |
|---|---|
| Deadline to commence Notice Program | **Within 30 days of Preliminary Approval Order** |
| Deadline to complete Notice Program | **At least 60 days before the original date of Final Approval Hearing** |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees and Costs | **45 days before the original date of Final Approval Hearing** |
| Opt-out Period Ends | **30 days before the original date of Final Approval Hearing** |
| Opt-out Period Ends | **30 days before the original date of Final Approval Hearing** |
| Final Approval Hearing | **Week of June 10, 2024 (or such later date available on the Court's calendar).** |
| Claim Form Deadline | **90 days from commencement of Notice Program** |

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court: (1) Preliminarily approve the Settlement; (2) Certify the Settlement Class for settlement purposes; (3) Approve the Notices and Notice Program, including the opt-out and objection procedures; (4) Approve the Claim Form and Claims process; (5) Appoint Plaintiffs as Class Representatives; (6) Appoint Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel; (7) Appoint Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; and (8) Enter the proposed Preliminary Approval Order, attached hereto as *Exhibit C.*

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Plaintiffs have met and conferred with Defendant and Defendant does not oppose the relief requested in this Motion.


Dated: December 28, 2023.                    Respectfully submitted,

                                            By: <u>*/s/ Jeff Ostrow*</u>
                                            Jeff Ostrow (FBN 121452)
                                            Kristen Lake Cardoso (FBN 44401)
                                            **KOPELOWITZ OSTROW P.A.**
                                            One West Las Olas Blvd., Suite 500
                                            Fort Lauderdale, FL 33301
                                            Telephone: (954) 332-4200
                                            ostrow@kolawyers.com
                                            cardoso@kolawyers.com