# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ANGELICA DIPIERRO, et al., *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | |
| v. | |
| FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a TAMPA GENERAL HOSPITAL, a Florida corporation, | Case No.: 8:23-cv-01864-KKM-UAM |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement ("Settlement" or "Agreement"),[1] dated as of December __, 2023, is entered into between Plaintiffs, Angelica DiPierro, Stacey Graham, Deborah Ivey, Edward James, Sr., Keon Critchlow, and Aubrey Rassel, on behalf of themselves and the Settlement Class, on the one hand, and Defendant, Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

**I.    Procedural History**

1.    On or around May 31, 2023, TGH detected unusual activity in its computer systems and ultimately determined an unauthorized third party had accessed TGH's network and certain system files between May 12, 2023, and May 30, 2023.

2.    TGH's investigation confirmed the Data Security Incident included approximately

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II below or as defined elsewhere in the Agreement.

2.1 million individuals' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information"), including names, addresses, telephone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations.

3.      Following the Data Security Incident, TGH was named a Defendant in this Action and 15 subsequently-filed Related Actions that are materially and substantively identical, as they have overlapping claims, seek to represent the same putative class members (if brought as a class action), and arise out of the same Data Security Incident. TGH at all times disputes the allegations in this Action and the Related Actions.

4.      **The *DiPierro* Action**

a.      On July 21, 2023, Plaintiff DiPierro filed this Action against TGH in the 13th Judicial Circuit Court, Hillsborough County, Florida, Case No. 23-CA-013984.

b.      On August 3, 2023, Plaintiff DiPierro filed a Motion to Consolidate Actions, Appoint Leadership Structure, and Set Schedule for Filing of Consolidated Class Action Complaint in the state court action, seeking to, among other things, consolidate the case with two related cases subsequently filed in Hillsborough County.

c.      On August 7, 2023, plaintiffs in another subsequently filed related case, the *Doe 1* Action, filed a Notice of Related Case, Request to Stay Pending Motion to Appoint Leadership Structure, and Set Briefing Schedule for Motion Seeking Appointment of interim Class Counsel filed in the *Doe 1* Action.

d.      On August 9, 2023, Plaintiff DiPierro served an informal request for documents and information on TGH relating to jurisdictional issues, as well as to prepare for

2

anticipated mediation.

e.       Plaintiff DiPierro also propounded interrogatories and a request for production of documents on TGH in the state court action.

f.       On August 17, 2023, this Action was removed to the U.S. District Court for the Middle District of Florida.

g.       Thereafter, Plaintiff DiPierro propounded interrogatories and a request for production of documents on TGH in the federal action.

h.       On August 17, 2023, TGH filed a Notice of Related Actions, identifying the *Russo* Action, *Ruggiero* Action, *Doe 1* Action, *Borchers* Action, *Andriano* Action, *Morgan* Action, *Colon* Action, *Ramirez* Action, *Bradds* Action, *Wagner* Action, *Doe 2* Action, and *Benck* Action as related to the *DiPierro* Action.

i.       On August 21, 2023, Plaintiff DiPierro filed a Notice of Related Actions, identifying the *Ruggiero* Action, *Russo* Action, *Andriano* Action, and *Borchers* Action as related to the *DiPierro* Action.

j.       On August 21, 2023, Plaintiff DiPierro filed a Certificate of Interested Persons and Corporate Disclosure Statement.

k.       On August 21, 2023, TGH filed a Certificate of Interested Persons and Corporate Disclosure Statement.

l.       On August 22, 2023, Plaintiffs filed an Amended Class Action Complaint (the operative Complaint) asserting claims for negligence, negligence *per se*, breach of implied contract and implied covenant of good faith and fair dealing, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* on behalf of a nationwide class and a Florida subclass.

m.      On August 23, 2023, TGH filed an Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiffs' Amended Class Action Complaint, which the Court granted on August 23, 2023.

n.      On August 23, 2023, Plaintiffs filed a Notice of Lead Counsel Designation, identifying Jeff Ostrow as lead counsel for Plaintiffs in this Action.

o.      On August 23, 2023, TGH's counsel, Casie D. Collignon, filed an Unopposed Motion to Appear Pro Hac Vice, which the Court granted on August 23, 2023.

p.      On August 24, 2023, TGH's counsel, Sarah A. Ballard, filed an Unopposed Motion to Appear Pro Hac Vice, which the Court granted on August 25, 2023.

q.      On August 25, 2023, the Parties filed a Stipulated Protective Order Regarding Disclosure of Confidential or Highly Confidential Materials.

r.      On August 25, 2023, the Parties filed a Stipulation Concerning Protocol for Production of Documents and Electronically Stored Information.

s.      On August 29, 2023, the Court entered an Order stating that if the Parties intended that the Court enter discovery orders consistent with the two August 25, 2023 stipulations, they were directed to move the Court for that relief.

t.      Thus, on August 29, 2023, the Parties filed an Agreed Motion for Entry of Stipulated Protective Order Regarding Disclosure of Confidential or Highly Confidential Materials and Parties Stipulation Concerning Protocol for Production of Documents and Electronically Stored Information.

u.      On August 29, 2023, TGH filed a Notice of Lead Counsel Designation, identifying Casie D. Collignon as lead counsel for TGH in this Action.

v.      On September 6, 2023, the Court entered an Order granting the Parties'

Agreed Motion for Entry of Stipulated Protective Order Regarding Disclosure of Confidential or Highly Confidential Materials and Parties Stipulation Concerning Protocol for Production of Documents and Electronically Stored Information.

       w.     On September 25, 2023, TGH filed a Motion to Dismiss.

       x.     On September 26, 2023, the plaintiff in the *Doe 1* Action filed a Notice of Related Case, Notice of Pending Motions to Consolidate and for Appointment of Interim Class Counsel.

       y.     On September 26, 2023, the Parties filed a Uniform Case Management Report.

       z.     On October 2, 2023, Plaintiffs filed a Response to Non-Parties' Notice of Related Case, Notice of Pending Motion to Consolidate and for Appointment of Interim Class Counsel, and filed Plaintiffs' Motion to Stay Pending the Outcome of Mediation.

       aa.     On October 9, 2023, Plaintiffs filed their Opposition to TGH's Motion to Dismiss.

       bb.     On October 10, 2023, Plaintiffs served their Federal Rule of Civil Procedure 26 Initial Disclosures on TGH.

       cc.     On October 18, 2023, TGH responded to Plaintiff DiPierro's informal discovery requests with substantial documents and written responses.

       dd.     On October 25, 2023, the Court entered an Order denying Plaintiffs' Motion to Stay as moot.

    5.    **The Related Actions**

       a.     **The *Colon* Action**

           i.     On July 21, 2023, *Colon, et al. v. Florida Health Sciences Center,*

*Inc. d/b/a/ Tampa General Hospital*, Case No. Case No. 23-CA-013991, was filed in the 13th

Judicial Circuit Court, Hillsborough County, Florida.

         ii.      On August 23, 2023, the *Colon* Action was removed to the M.D. Fla.

and captioned Case No. 8:23-cv-01909-KMM-CPT.

         iii.      On September 18, 2023, Plaintiffs filed an amended complaint.

         iv.      On September 26, 2023, the Court entered an Order staying the

*Colon* Action until December 6, 2023, pending the outcome of mediation.

         v.      On November 10, 2023, TGH filed a Status Report, notifying the

Court of the Settlement in this Action.

      b.      **The *Ramirez* Action**

         i.      On July 27, 2023, *Ramirez v. Florida Health Sciences Center, Inc.*

*d/b/a Tampa General Hospital*, Case No. 23-CA-014150, was filed in the 13th Judicial Circuit

Court, Hillsborough County, Florida.

         ii.      On August 21, 2023, the *Ramirez* Action was removed to the M.D.

Fla. and captioned Case No. 8:23-cv-01890-KKM-TGW.

         iii.      On September 22, 203, the Court entered an Order staying the

*Ramirez* Action until December 6, 2023, pending the outcome of mediation in this Action.

         iv.      On November 10, 2023, TGH filed a Status Report, notifying the

Court of the Settlement in this Action.

      c.      **The *Borchers* Action**

         i.      On August 3, 2023, *Borchers v. Florida Health Sciences Center, Inc.*

*d/b/a Tampa General Hospital*, Case No. 8:23-cv-01728-MSS-AEP, was filed in the M.D. Fla.

         ii.      On August 4, 2023, the Plaintiff filed a Notice of Voluntary

Dismissal.

        iii.      On August 8, 2023, the Court dismissed the *Borchers* Action without prejudice.

        d.    **The *Andriano* Action**

        i.      On August 4, 2023, *Andriano v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01745-TPB-TGW, was filed in the M.D. Fla.

        ii.      On August 7, 2023, the Plaintiff filed a Notice of Voluntary Dismissal.

        iii.      On August 8, 2023, the Court dismissed the *Andriano* Action without prejudice.

        e.    **The *Doe 1* Action**

        i.      On August 4, 2023, *Doe 1, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Non-Profit Corporation*, Case No. 23-CA-014344, was filed in the 13th Judicial Circuit Court, Hillsborough County, Florida.

        ii.      On September 5, 2023, the *Doe 1* Action was removed to the M.D. Fla. and captioned Case No. 8:23-cv-01988-KKMAEP.

        iii.      On September 23, 2023, Plaintiffs filed a Motion to Consolidate and Motion for Appointment of Interim Class Counsel, to which TGH filed a Response on October 9, 2023.

        iv.      On October 11, 2023, the Court denied, without prejudice, Plaintiffs' Motion to Consolidate and Motion for Appointment of Interim Class Counsel.

        v.      On October 16, 2023, the Court entered an Order staying the *Doe 1* Action until December 6, 2023, pending the outcome of mediation in this Action.

vi.        On November 15, 2023, the Court dismissed the *Doe 1* Action, without prejudice.

f.        **The *Russo* Action**

i.        On August 7, 2023, *Russo v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida corporation*, Case No. 8:23-cv-01757-KKM-CPT, was filed in the M.D. Fla.

ii.        On September 19, 2023, the Court entered an Order staying the *Russo* Action until December 6, 2023, pending the outcome of mediation in this Action.

iii.        On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

g.        **The *Wagner* Action**

i.        On August 7, 2023, *Wagner v. Florida Health Sciences Center, Inc. doing business as Tampa General Hospital*, Case No. 23-CA-014367, was filed in the 13th Judicial Circuit Court, Hillsborough County, Florida.

ii.        On August 30, 2023, the *Wagner* Action was removed to the M.D. Fla. and captioned Case No. 8:23-cv-01957-KKM-JSS.

iii.        On September 19, 2023, the Court entered an Order staying the *Wagner* Action until December 6, 2023, pending the outcome of mediation in this Action.

iv.        On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

h.        **The *Bradds* Action**

i.        On August 7, 2023, *Bradds & Testa v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Corporation*, Case No. 23-CA-014364, was

8

filed in the 13th Judicial Circuit Court, Hillsborough County, Florida.

      ii.      On September 20, 2023, the *Bradds* Action was removed to the M.D. Fla. and captioned Case No. 8:23-cv-02127-KKM-JSS.

      iii.      On October 4, 2023, the Court dismissed the Complaint as "shotgun pleading."

      iv.      On October 18, 2023, Plaintiffs in the *Bradds* Action filed an amended complaint.

      v.      On October 25, 2023, the Court entered an Order staying the *Bradds* Action until December 6, 2023, pending the outcome of mediation in this Action.

      vi.      On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

      i.      **The *Doe 2* Action**

      i.      On August 7, 2023, *Doe* [*2*] *v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Non-Profit Corporation*, Case No. 23-CA-014376, was filed in the 13th Judicial Circuit Court, Hillsborough County, Florida.

      ii.      On September 22, 2023, the *Doe 2* Action was removed to M.D. Fla. and captioned Case No. 8:23-cv-02151-KKMUAM.

      iii.      On October 25, 2023, the Court entered an Order staying the *Doe 2* Action until December 6, 2023, pending the outcome of mediation in this Action.

      iv.      On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

      j.      **The *Morgan* Action**

      i.      On August 8, 2023, *Morgan v. Florida Health Sciences Center, Inc.*

*d/b/a Tampa General Hospital*, Case No. 23-CA-014396, was filed in the 13th Judicial Circuit Court, Hillsborough County, Florida.

        ii.     On September 5, 2023, the *Morgan* Action was removed to the M.D. Fla. and captioned Case No. 8:23-cv-0993-KKM-TGW.

        iii.     On October 2, 2023, the Court entered an Order directing the Plaintiff to establish why the Court should not stay the *Morgan* Action pending the outcome of mediation in this Action ("Order to Show Cause"), to which Plaintiff Morgan responded on October 16, 2023.

        iv.     On October 16, 2023, Plaintiff Morgan also filed a Motion to Remand the *Morgan* Action to state court, to which TGH responded and opposed on October 30, 2023.

        v.     On October 30, 2023, TGH filed a response to the Order to Show Cause.

        vi.     On November 15, 2023, the Court ordered the parties in the *Morgan* Action to submit a case management report by November 27, 2023.

        vii.     On November 27, 2023, the parties in the *Morgan* Action submitted a case management report.

        k.     **The *Ruggiero* Action**

        i.     On August 8, 2023*, Ruggiero v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01778-WFJ-AAS, was filed in the M.D. Fla.

        ii.     On October 17, 2023, the Court entered an Order staying the *Ruggiero* Action until December 6, 2023, pending the outcome of mediation in this Action.

        iii.     On November 10, 2023, TGH filed a Status Report, notifying the

Court of the Settlement in this Action.

  l.  **The *Benck* Action**

    i.  On August 10, 2023, *Benck v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Corporation*, Case No. 23-CA-014449, in the 13th Judicial Circuit Court, Hillsborough County, Florida.

    ii.  TGH has not been served with the Summons and Complaint as of the date of this Agreement.

  m.  **The *Robbins* Action**

    i.  On August 21, 2023, *Robbins v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 23-CA-014686, was filed in Hillsborough County, Florida.

    ii.  On September 26, 2023, the *Robbins* Action was removed to the M.D. Fla. and captioned Case No. 8:23-cv- 02170-MSS-AAS.

    iii.  On October 4, 2023, the Court entered an Order staying the *Robbins* Action until December 6, 2023, pending the outcome of mediation in this Action.

    iv.  On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

  n.  **The *Raslavich* Action**

    i.  On August 31, 2923, *Raslavich v. Florida Health Sciences Center, Inc.*, Case No. 23-CA-014923, was filed in Hillsborough County, Florida.

    ii.  On September 29, 2023, the court entered an Order extending the time for TGH to respond to the Complaint from September 28, 2023, to November 16, 2023.

    iii.  On November 14, 2023, the parties filed a Joint Motion to Stay Case

Pending Preliminary and Final Approval of the Class Action Settlement in the *DiPierro* Action.

      o.     **The *Doe 3* Action**

          i.     On September 13, 2023, *Doe [3] v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, a Florida Non-Profit Corporation*, Case No. 8:23-cv-02072-VMCTGW, was filed in the M.D. Fla.

          ii.     On October 24, 2023, the Court entered an Order staying the *Doe 3* Action until December 6, 2023, pending the outcome of mediation in this Action.

          iii.     On November 10, 2023, TGH filed a Status Report, notifying the Court of the Settlement in this Action.

      6.     **Mediation and Settlement**

      a.     On November 6, 2023, the Parties participated in a full-day, private mediation before experienced data breach mediator Jill R. Sperber of Judicate West. In advance of the mediation, TGH provided Class Counsel with information related to the type of data disclosed in the Data Security Incident, the alleged impact to Plaintiffs, and information to assist in determining where jurisdiction is appropriate. The mediation concluded with the Parties agreeing to the material terms of a settlement that would resolve Plaintiffs' claims and those of the putative class.

      b.     On November 9, 2023, the Parties filed a Joint Notice of Settlement and Request to Stay any Current Deadlines in this Action.

      c.     On November 13, 2023, the Court entered an Order granting the Parties' Motion to Stay and directing the Parties to move for Preliminary Approval of the Settlement or, if needed, file an additional Status Report alerting the Court of the Parties' progress by December 26, 2023.

d.      On November 14, 2023, the Parties executed a confidential Settlement Term Sheet containing the materials terms of the Settlement.

e.      The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. TGH has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, and disruption to its business operations associated with further litigation. TGH does not in any way acknowledge, admit to, or concede any of the allegations made in the operative Complaint (and all other complaints in the Related Actions), and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede the claims alleged in the Action lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, TGH, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.      Definitions

7.      "Action" means the lawsuit entitled *DiPierro, et al. v. Florida Health Sciences*

13

*Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01864 (M.D. Fla.).

8.      "Application for Attorneys' Fees and Costs" means the application made with the Motion for Final Approval seeking Class Counsel's attorneys' fees and reimbursement for costs.

9.      "CAFA Notice" means the Class Action Fairness notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

10.      "Cash Payment" means compensation paid to Settlement Class Members who elected either Cash Payment A or Cash Payment B.

11.      "Cash Payment A" means compensation paid to Settlement Class Members for ordinary losses, extraordinary losses, and/or lost time.

12.      "Cash Payment B" means a $150.00 cash payment, subject to *pro rata* adjustment, if necessary..

13.      "Claim" means the submission of a Claim Form by a Claimant.

14.      "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit 3***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

15.      "Claim Form Deadline" shall be 90 days from the date that Notice is first disseminated to the Settlement Class and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment.

16.      "Claimant" means a Settlement Class Member who submits a Claim Form.

17.      "Class Counsel" means: Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz Ostrow P.A.

18.     "Class List" means a list of all individuals in the Settlement Class. TGH shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. The Class List shall include the Settlement Class's names, postal address (if available), and telephone number (if available).

19.     "Class Representatives" means Angelica DiPierro, Stacey Graham, Deborah Ivey, Edward James, Sr., Keon Critchlow, and Aubrey Rassel.

20.     "Complaint" means the First Amended Class Action Complaint filed in the Action on August 22, 2023.

21.     "Court" means the United States District Court for the Middle District of Florida and the Judge(s) assigned to the Action.

22.     "Credit Monitoring" means two years of credit monitoring Settlement Class Members may elect.

23.     "Data Security Incident" means the alleged May 2023 incident in which unauthorized third parties purportedly gained access to TGH's network containing Private Information.

24.     "Defendant" means Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital or TGH.

25.     "Defendant's Counsel" or "TGH's Counsel" means Julie Singer Brady, Casie D. Collignon, and Sarah A. Ballard of Baker & Hostetler LLP.

26.     "Effective Date" means 5 days after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order,

then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

27.     "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

28.     "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

29.     "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees and Costs.

30.     "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

31.     "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 2***, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

32.     "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

33.     "Motion for Preliminary Approval" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

34.     "Notice" means the Long Form Notice, Postcard Notice, Settlement Website and

16

settlement telephone line that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

35.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Long Form Notice, Postcard Notice, Settlement Website and Settlement telephone line.

36.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

37.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

38.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

39.    "Party" means each of the Plaintiffs and Defendant, and "Parties" means Plaintiffs and Defendant collectively.

40.    "Plaintiffs" means Angelica DiPierro, Stacey Graham, Deborah Ivey, Edward James, Sr., Keon Critchlow, and Aubrey Rassel.

41.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1***, that the Settlement Administrator shall disseminate to the Settlement Class by mail.

42.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

43.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

44.     "Related Actions" means the 15 actions filed after the *DiPierro* Action against TGH regarding the Data Security Incident, identified in Paragraph 5 of this Agreement.

45.     "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

46.     "Released Claims" means the claims described in Section XIII of this Agreement. The Released Claims exclude personal injury claims.

47.     "Released Parties" means TGH, and its present and former parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, employees, stockholders, heirs, agents, servants, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on TGH's behalf, in their capacity as such. It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

48.     "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by

or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

49.    "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., which must execute any requested Business Associate Agreement of TGH.

50.    "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration.

51.    "Settlement Class" means all persons in the United States who were sent notification from TGH that their Private Information was potentially compromised as a result of the Data Security Incident that occurred between May 12, 2023, and May 30, 2023, and discovered by TGH on or about May 31, 2023. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff.

52.    "Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

53.    "Settlement Class Member Benefit" means the Cash Payment and, if applicable, Credit Monitoring, elected by Settlement Class Members.

54.    "Settlement Fund" means the non-reversionary $7,800,000.00 cash fund that TGH has agreed to pay under the terms of the Settlement.

55.     "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

56.     "TGH" means Defendant, Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital.

57.     "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.     Settlement Fund

58.     The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim; (2) attorneys' fees and costs awarded by

the Court to Class Counsel; and (3) all Settlement Administration Costs.

59.    Defendant agrees to make a payment of and deposit that payment into the Settlement Fund as follows: (i) Defendant shall pay one million, two hundred thousand dollars ($1,200,000.00) into the Settlement Fund within 21 days of the Court's entry of the order granting Preliminary Approval to pay for Settlement Administration Costs; and (ii) Defendant shall pay the remaining six million, six hundred thousand dollars ($6,600,000.00) into the Settlement Fund within 30 days after the Effective Date. Prior to the initial payment for Settlement Administration Costs, the Settlement Administrator will provide payment instructions, a W-9, and contact information for an employee of the Settlement Administrator to voice-verify the payment instructions to Defendant. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendant's liability shall not exceed $7,800,000.00.

60.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg.§ 1.468B-l at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on TGH, TGH's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. TGH, TGH's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold TGH, TGH's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

IV.     <u>**Certification of the Settlement Class**</u>

61.     Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. TGH agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, TGH shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

V.      <u>**Settlement Consideration**</u>

62.     **Settlement Class Member Benefits**

When submitting a Claim, Settlement Class Members must choose either Cash Payment A or Cash Payment B. Additionally, Settlement Class Members may elect to receive Credit Monitoring. If a Settlement Class Member does not submit a Valid Claim or opt out, the Settlement Class Member will release his or her claims against TGH without receiving a Settlement Class Member Benefit.

63.     **Cash Payment A**

a.      ***<u>Compensation for Ordinary Losses</u>***: Compensation for unreimbursed ordinary losses fairly traceable to the Data Security Incident, up to a total of $1,500.00 per person. Settlement Class Members must submit documentation supporting their Claims for ordinary losses. This documentation may include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. Settlement Class Members shall not be

22

reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by TGH or otherwise. These ordinary losses may include the following:

        i.        ***Out-of-pocket expenses incurred*** as a result of the Data Security Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; and

        ii.        ***Fees for credit reports, Credit Monitoring, or other identity theft insurance product*** purchased between the date of the Data Security Incident and the date of the Claim Form Deadline.

        b.        ***Compensation for Extraordinary Losses***: Compensation for extraordinary losses, up to a total of $10,000.00, per Settlement Class Member, if the extraordinary loss is:

        i.        An actual, documented and unreimbursed monetary loss;

        ii.        More likely than not caused by the Data Security Incident;

        iii.        Occurred on or after May 12, 2023 and before the Claim Form Deadline;

        iv.        Not already covered by one or more of the ordinary loss categories, and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance.

        c.        ***Compensation for Lost Time***: Settlement Class Members with time spent remedying issues related to the Data Security Incident may receive reimbursement of $30.00 per

hour up to 6 hours (for a total of $180.00) with an attestation including a brief description of the action(s) take in response to the Data Security Incident. Claims made for lost time may be combined with reimbursement for ordinary losses subject to the $1,500.00 aggregate individual cap referenced above.

64.     **Cash Payment B**

Instead of selecting Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is a flat payment in the amount of $150.00.

65.     ***Pro Rata* Adjustments**

Settlement Class Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund.

66.     **Credit Monitoring**

In addition to electing a Cash Payment, Settlement Class Members may also make a Claim for Credit Monitoring for two years with three bureaus: Experian, Equifax, and TransUnion. Settlement Class Credit Monitoring has a value of $90.00 per year per Settlement Class Member.

67.    **Business Practice Changes & Confirmatory Discovery**

Plaintiffs have received assurances that Defendant either has undertaken or will undertake reasonable steps to further secure its systems and environments. Defendant has provided confidential discovery regarding the number of individuals in the Settlement Class broken down by state of residence, the facts and circumstances of the Data Security Incident and Defendant's response thereto, and the changes and improvements that have been made or are being made to protect class members' Private Information. Defendant will provide a declaration attesting to the undertaken or planned data security enhancements at Plaintiffs' request.

## VI.    Settlement Approval

68.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and TGH.

69.    The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim submission process; (5) approve the procedures for individuals in the Settlement Class to opt out of or object to the Settlement; (6) stay the Action and Related Actions pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and TGH's Counsel.

## VII.    Settlement Administrator

70.    The Parties agree that, subject to Court approval, Epiq shall be the Settlement

Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution and the Business Associate Agreement of TGH.

71.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

72.     The Settlement Administrator's duties include to:

a.      Provide CAFA Notice;

b.      Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

c.      Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

d.      Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

e.      Establish and maintain the Settlement Website to provide important information about the Settlement and to receive electronic Claim Forms;

f.      Establish and maintain an automated toll-free telephone line for the

Settlement Class to call with Settlement-related inquiries, and answer the frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

       g.      Respond to any mailed Settlement Class member inquiries;

       h.      Process all opt-out requests from the Settlement Class;

       i.      Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

       j.      In advance of the Final Approval Hearing, prepare a declaration to submit to the Court confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

       k.      Distribute, out of the Settlement Fund, Cash Payments by electronic means, unless a specific request is made for an alternate form of payment;

       l.      Pay Court-approved attorneys' fees and costs out of the Settlement Fund;

       m.      Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

       n.      Any other Settlement Administration function at the instruction of Class Counsel and TGH, including, but not limited to, verifying that the Settlement Fund has been

properly administered and that the Cash Payments have been properly distributed.

73.    At TGH's discretion, the Settlement Administrator must agree to execute Defendant's Business Associate Agreement.

74.    The Notice Program, including the Long Form Notice, Postcard Notice, and Claim Form, will be reviewed and approved by the Settlement Administrator, but may be revised as agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to these documents may also be made prior to dissemination of Notice.

## VIII.    Notice to the Settlement Class

75.    TGH will make available to Class Counsel and the Settlement Administrator the Class List no later than 7 days after entry of the Preliminary Approval Order.

76.    Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Postcard Notice shall be disseminated via U.S. Mail to the Settlement Class's mailing addresses, to the extent known. Notice shall also be published on the Settlement Website.

77.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and

deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

78.     The Settlement Administrator shall establish the Settlement Website no later than the day before Postcard Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

79.     The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt out of the Settlement; and the Postcard Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

80.     The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's

Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

81.    For an objection to be considered by the Court, the objection must also set forth:

a.    the objector's full name, mailing address, telephone number, and email address (if any);

b.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;

e.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections

that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

       f.     any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

       g.     the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

       h.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

       i.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

       j.     the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

82.     The Settlement Administrator shall perform reasonable address traces for Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 60 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces.

83.     The Notice Program shall be completed no later than 60 days before the original date set for the Final Approval Hearing.

31

## IX.    Claim Form Process and Disbursement of Cash Payments

84.    The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

85.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

86.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

87.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

88.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement

Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

89.     Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless TGH and Class Counsel otherwise agree.

90.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a.      Failure to fully complete and/or sign the Claim Form;

b.      Illegible Claim Form;

c.      The Claim Form is fraudulent;

d.      The Claim Form is duplicative of another Claim Form;

e.      The Claimant is not a Settlement Class Member;

f.      The Claimant submitted a timely and valid request to opt out of the Settlement Class.

g.      The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.      Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.      The Claim Form otherwise does not comply with the requirements of this Settlement.

91.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.      The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.      A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph.

c.      If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

d.      The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

92.     The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or TGH's Counsel. Additionally, Class Counsel and TGH's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

93.     No person or entity shall have any claim against TGH, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

94.     No later than 75 days after Final Approval or 75 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

95.     Cash Payments to Settlement Class Members will be made electronically (Venmo, Zelle, or CashApp) or by paper check. Settlement Class Members with Valid Claims shall receive an email instructing them to select the type of payment they wish to receive. Upon issuance of the email, Settlement Class Members shall have 30 days to select their method of payment. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

96.     The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that elected Credit Monitoring with information on how to enroll in the Credit Monitoring, including the activation code.

## X.  <u>Final Approval Order and Final Judgment</u>

97.  Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees and Costs, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees and Costs. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees and Costs, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

98.  At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees and Costs. Such proposed Final Approval Order shall, among other things:

    a.    Determine that the Settlement is fair, adequate and reasonable;

    b.    Finally certify the Settlement Class for settlement purposes only;

    c.    Determine that the Notice Program satisfies Due Process requirements;

    d.    Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

    e.    Release TGH and the other Released Parties from the Released Claims; and

    f.    Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including TGH, Plaintiffs, all Settlement Class Members, and all objectors, to

administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.   Attorneys' Fees and Costs

99.   *Attorneys' Fees and Costs* - Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel, within 7 days of the second round of funding referenced in Paragraph 59, or within 35 days of the the of the Effective Date if there are objections, whichever date is earlier.

100.   This Settlement is not contingent on approval of the request for attorneys' fees and costs, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs were not negotiated until after all material terms of the Settlement.

## XII.   Disposition of Residual Funds

101.   In the event there are funds remaining from uncashed checks in the Settlement Fund 20 days following the 180-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court.

## XIII.   Releases

102.   As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any

37

other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Security Incident; or (b) any of the alleged violations of laws or regulations cited in the Complaint.

103.    Plaintiffs and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

104.    Individuals in the Settlement Class who opt out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement.

105.    With respect to the Released Claims, Plaintiffs and Settlement Class Members, expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and TGH with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS

SETTLEMENT WITH THE DEBTOR.

106.    Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

107.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

**XIV.   Termination of Settlement**

108.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

    a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

    b.    The Court has entered the Preliminary Approval Order;

    c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

    d.    The Effective Date has occurred.

109.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

110.    TGH shall have the option to terminate this Agreement if more than 500 individuals in the Settlement Class opt out of the Settlement. TGH shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

111.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed, including TGH's motion to dismiss and Plaintiffs' response thereto, which shall be deemed pending. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

112.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to TGH. However, TGH shall have no right to seek

from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration

Costs paid by TGH. After payment of any Settlement Administration Costs that have been incurred

and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the

balance of the Settlement Fund to TGH within 21 days of termination.

## XV.   <u>Effect of Termination</u>

113.    The grounds upon which this Agreement may be terminated are set forth in Section

XIV. In the event of a termination, this Agreement shall be considered null and void; all of

Plaintiffs', Class Counsel's, TGH's, and TGH's Counsel's obligations under the Settlement shall

cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action

as if the Parties had not entered into this Agreement. In addition, in the event of such a termination,

all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and

preserved.

114.    In the event the Settlement is terminated in accordance with the provisions of this

Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be

discoverable or offered into evidence or used in the Action or any other action or proceeding for

any purpose. In such event, all Parties to the Action shall stand in the same position as if this

Agreement had not been negotiated, made, or filed with the Court.

## XVI.   <u>No Admission of Liability</u>

115.    This Agreement reflects the Parties' compromise and settlement of disputed claims.

This Agreement shall not be construed as or deemed to be evidence of an admission or concession

of any point of fact or law. TGH has denied and continues to deny each of the claims and

contentions alleged in the Complaint. TGH specifically denies that a class could or should be

certified in the Action for litigation purposes. TGH does not admit any liability or wrongdoing of

any kind, by this Agreement or otherwise. TGH has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

116.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

117.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

118.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

119.     In addition to any other defenses TGH may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII.  <u>Miscellaneous Provisions</u>

120.     <u>Gender and Plurals</u>. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

121.     <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

122.     <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

123.     <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

124.     <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

125.   <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

126.   <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Florida, without regard to the principles thereof regarding choice of law.

127.   <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

128.   <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

129.   <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs or Class Counsel:

       Jeff Ostrow
       Kopelowitz Ostrow P.A.
       1 West Las Olas Blvd., Ste. 500
       Fort Lauderdale, FL 33301
       ostrow@kolawyers.com

If to Defendant or Defendant's Counsel:

       Casie D. Collignon
       Baker & Hostetler LLP
       1801 California Street, Ste. 4400
       Denver, CO 80202
       ccollignon@bakerlaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

    130.   <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and TGH's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

    131.   <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

    132.   <u>Authority</u>. Class Counsel (for Plaintiffs and the Settlement Class), and TGH's Counsel (for TGH), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and TGH to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of

the terms and provisions of this Agreement.

133.   _Agreement Mutually Prepared_. Neither Plaintiffs nor TGH shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

134.   _Independent Investigation and Decision to Settle_. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

135.   _Receipt of Advice of Counsel_. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement

and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signature Page to Follow*

*Angelica Dipierro*
Angelica Dipierro (Dec 26, 2023 12:47 PST)

ANGELICA DIPIERRO
*Plaintiff*

*Stacey Graham*

STACEY GRAHAM
*Plaintiff*

Deborah Ivey (Dec 26, 2023 17:23 EST)

DEBORAH IVEY
*Plaintiff*

*Edward James 3*
Edward James Sr (Dec 27, 2023 15:09 EST)

EDWARD JAMES, SR.
*Plaintiff*

*Keon Critchlow*
Keon Critchlow (Dec 27, 2023 15:26 EST)

KEON CRITCHLOW
*Plaintiff*

Aubrey Rassel (Dec 27, 2023 19:15 EST)

AUBREY RASSEL
*Plaintiff*

DocuSigned by:

*Jeff Ostrow*
DB41A5039BD0496...

JEFF OSTROW ESQ.
KOPELOWITZ OSTROW P.A.
*Class Counsel*


FLORIDA HEALTH SCIENCES CENTER, INC.
d/b/a TAMPA GENERAL HOSPITAL
DocuSigned by:

809AFCC4FE845...
By: Nico Justice
Its                    Senior Director
DocuSigned by:

E50080F3977848A...
CASIE D. COLLIGNON
BAKER & HOSTETLER LLP
*Counsel for Defendant*

48

# EXHIBIT 1

Florida Health Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

**NO-PRINT ZONE**

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice
*DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital,*
Case No. 8:23-cv-01864 (M.D. Fla.)

**If you were notified of a Data Security Incident involving Tampa General Hospital that occurred in May 2023, you may be entitled to benefits from a class action settlement.**

*A federal court has authorized this notice. This is __not__ a solicitation from a lawyer.*

www.floridahealthsettlement.com
1-XXX-XXX-XXXX

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A $7.8 million settlement has been reached in a class action lawsuit against Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Defendant") arising out of a Data Security Incident that occured in May 2023, by an unauthorized third party that included access to Defendant's network and potential access to individuals' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information"). Defendant denies the allegations in the lawsuit.

**Who is Included?** You are part of the Settlement Class because records show you were sent notice by the Defendant that your Private Information was potentially compromised in the Data Security Incident.

**What does the Settlement Provide?** You may be able to receive a Cash Payment A <u>or</u> B <u>and</u> Credit Monitoring, subject to *pro rata* adjustments:

<u>**Cash Payment A:**</u>
- **Compensation for Ordinary Losses**: You may be eligible for reimbursement up to $1,500.00 with supporting documentation showing that you incurred losses as a result of the Data Security Incident.
- **Compensation for Extraordinary Losses**: For certain documented monetary losses, you may be eligible for reimbursement up to $10,000.00.
- **Compensation for Lost Time**: You are also eligible to receive reimbursement for up to six hours of lost time spent dealing with the Data Security Incident, calculated at a rate of $30.00 per hour.

<u>**Cash Payment B:**</u> Instead of Cash Payment A, you may elect to receive a flat payment in the amount of $150.00.

<u>**Credit Monitoring:**</u> In addition to a Cash Payment A or B, you may receive two years of free Credit Monitoring services.

You must submit a Valid Claim online or by mail postmarked by **Month XX, 2024.** If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent to you to elect your method of payment.

**Other Options**. If you do not want to be legally bound by the Settlement, you must opt out of the Settlement no later than **Month XX, 2024**. If you do not want to opt out, you will give up the right to sue and will release any legal claims against the Released Parties, including Defendant, about the legal issues in this Action. If you do not opt out, you may object to the Settlement by **Month XX, 2024**. The Long Form Notice on the Settlement Website has instructions on how to opt out or object. If you do nothing, you will get no Settlement benefits, and you will be bound by the Settlement.

The Court will hold a Final Approval Hearing on **Month XX, 2024**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees request of up to 33.33% of the $7.8 million Settlement Fund, plus reimbursement of costs, as well as any objections to the Settlement, including the fees and costs. You or your personal attorney may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, and if so, instructions

will be a copy at www.floridahealthsettlement.com.
**This notice is a summary. Learn more about the Settlement** at www.floridahealthsettlement.com, or by calling toll free 1-XXX-XXX-XXXX.          <<UNIQUE ID>>

<<MailID>>

## THIS IS NOT A CLAIM FORM

### PERSONAL INFORMATION UPDATE FORM

*DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*
Case No. 8:23-cv-01864

If you wish to notify the Settlement Administrator of any change in your contact information, you may fill out and return this card.

First Name:                                    MI:          Last Name:

Mailing Address:

City:                                                            State:          ZIP Code:

**BARCODE
NO-PRINT
ZONE**

PLACE
STAMP
HERE

Florida Health Settlement
Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

# EXHIBIT 2

United States District Court Middle District of Florida

# If you were notified of a Data Security Incident involving Tampa General Hospital that occurred in May 2023, you may be entitled to benefits from a class action settlement.

*A federal court has authorized this notice. This is **not** a solicitation from a lawyer.*

- A $7.8 million settlement has been reached in a class action lawsuit against Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Defendant") arising out of a data security incident Defendant experienced in May 2023, by an unauthorized third party ("Data Security Incident").

- You are part of the Settlement Class if you were sent notice by the Defendant that your Private Information was potentially compromised in the Data Security Incident between May 12, 2023, and May 30, 2023. Under the terms of the Settlement, Settlement Class Members who submit Valid Claims may be able to recover the following benefits, subject to *pro rata* adjustments:

  - **Cash Payment A:**

    - **Compensation for Ordinary Losses**: With supporting documentation showing you incurred losses as a result of the Data Security Incident, you may be eligible for reimbursement up to $1,500.00.

    - **Compensation for Extraordinary Losses:** For certain documented monetary losses, you may be eligible for reimbursement up to $10,000.00.

    - **Compensation for Lost Time:** You are also eligible to receive reimbursement for up to six hours of lost time spent dealing with the Data Security Incident, calculated at the rate of $30.00 per hour.

  **OR**

  - **Cash Payment B:** Instead of selecting Cash Payment A, you may elect to receive a flat payment in the amount of $150.00.

  **AND**

  - **Credit Monitoring:** In addition to receiving either Cash Payment A or Cash Payment B, you may elect to receive two years of free 3-bureau credit monitoring services.

- **Business Practice Changes:** Although Defendant denies any wrongdoing, Plaintiffs have received assurances that the hospital is continuously updating and hardening systems to help prevent events such as this from occurring and has implemented additional defensive tools and increased monitoring.

**This notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get Settlement Class Member Benefits is to submit a Valid Claim. | **Submitted online or by mail Postmarked by Month Day, 2024** |
| **OPT OUT OF THE SETTLEMENT** | Get no Settlement Class Member Benefits. Keep your right to file your own lawsuit against Defendant about the legal claims in this case. | **Postmarked by Month Day, 2024** |
| **OBJECT TO THE SETTLEMENT** | Stay in the Settlement, but tell the Court why you do not | **Received by Month Day, 2024** |

**Questions? Go to www.floridahealthsettlement.com or call 1-XXX-XXX-XXXX**

|  | agree with the Settlement. You will still be bound by the Settlement if the Court approves it. |  |
| **DO NOTHING** | Get no Settlement Class Member Benefits. Be bound by the Settlement. |  |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court must still decide whether to approve the Settlement. There will be no Settlement Class Member Benefits unless the Court approves the Settlement, and it becomes final.

# BASIC INFORMATION

## 1. Why is this notice being provided?

A federal court authorized this notice because you have the right to know about the proposed Settlement of this class action lawsuit and all of your rights and options before the Court decides to grant Final Approval of the Settlement. This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Kathryn Kimball Mizelle of the United States District Court for the Middle District of Florida is overseeing this class action. The case is known as *DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01864 (M.D. Fla). The persons who filed this lawsuit are called the "Plaintiffs" and/or "Class Representatives" and the company sued, Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, is called the "Defendant."

## 2. What is this lawsuit about?

Plaintiffs filed this lawsuit against Defendant. Plaintiffs allege that on or around May 31, 2023, Defendant detected unusual activity in its computer systems and ultimately determined that an unauthorized third party gained access to Defendant's network between May 12, 2023, and May 30, 2023. Defendant's investigation confirmed the Data Security Incident included approximately 2.1 million individuals' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information"), including names, addresses, telephone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service, and/or limited treatment information used by Defendant for its business operations.

Plaintiffs brought this lawsuit against Defendant alleging claims for negligence, negligence *per se*, breach of implied contract and implied covenant of good faith and fair dealing, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.204 *et seq.*

Defendant denies these allegations and denies any wrongdoing or liability. The Court has not decided who is right. Instead, Plaintiffs and Defendant have agreed to a settlement to avoid the risk, cost, and time of further litigation.

## 3. Why is the lawsuit a class action?

In a class action, one or more people (called plaintiff(s) or class representative(s)) sue on behalf of all people who have similar legal claims. Together, all these people are called a "class" or "class members." If the plaintiffs and defendant reach a settlement, the court resolves the issues for all class members via the settlement, except for those class members who timely opt out (exclude themselves) from the settlement.

4884-7542-0312.1

The proposed Class Representatives in this lawsuit are Plaintiffs Angelica DiPierro, Stacey Graham, Deborah Ivey, Edward James, Sr., Keon Critchlow, and Aubrey Rassel.

## 4.  Why is there a Settlement?

Plaintiffs and Defendant do not agree about the legal claims made in the lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of Plaintiffs or Defendant. Instead, Plaintiffs and Defendant have agreed to settle the lawsuit. The Class Representatives believe the Settlement is best for all individuals in the Settlement Class because of the benefits available to the Settlement Class and the risks and uncertainty associated with continuing the lawsuit.

# WHO IS INCLUDED IN THE SETTLEMENT?

## 5.  How do I know if I am part of the Settlement?

You are part of the Settlement Class if you were sent notification from Defendant that your Private Information was potentially compromised as a result of the Data Security Incident that occurred between May 12, 2023, and May 30, 2023, and was discovered by Defendant on or about May 31, 2023.

## 6.  Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff.

## 7.  What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class member, you may go to the Settlement Website at www.floridahealthsettlement.com or call the Settlement Administrator's toll-free telephone number at 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

## 8.  What does the Settlement provide?

If you are a Settlement Class Member and you timely submit a Valid Claim, you may be eligible for the following benefits subject to *pro rata* adjustment:

**Cash Payment A:**

**Compensation for Ordinary Losses**: All Settlement Class Members who submit a Valid Claim are eligible for up to a total of $1,500.00 per person for unreimbursed ordinary losses that are fairly traceable to the Data Security Incident. You must submit documentation supporting your Claim for ordinary losses, which may include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit

4884-7542-0312.1

monitoring product offered as part of the notice letter previously provided by Defendant or otherwise. Ordinary losses may include the following:

- **Out-of-pocket expenses incurred** as a result of the Data Security Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; and

- **Fees for credit reports, credit monitoring, or other identity theft insurance product** purchased between May 12, 2023, the date of the Data Security Incident, and **Month DD, 2024**, the deadline to file a Claim Form.

**Compensation for Extraordinary Losses:** Compensation for extraordinary losses, up to a total of $10,000.00, per Settlement Class Member, if the extraordinary loss is:

- An actual, documented and unreimbursed monetary loss;
- More likely than not caused by the Data Security Incident;
- Occurred on or after May 12, 2023, and before the Claim Form Deadline;
- Not one of the listed ordinary loss categories, and you made reasonable efforts to avoid, or seek reimbursement for, the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance.

**Compensation for Lost Time:** Settlement Class Members with time spent remedying issues related to the Data Security Incident may receive reimbursement of $30.00 per hour up to 6 hours (for a total of $180.00) with an attestation (a legal term meaning signing a formal document) including a brief description of the action(s) taken in response to the Data Security Incident. Claims made for lost time may be combined with reimbursement for ordinary losses up to a combined total of $1,500.00.

**OR**

**Cash Payment B:** Instead of selecting Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is a one-time payment of $150.00.

**AND**

**Credit Monitoring:** In addition to selecting a Cash Payment, Settlement Class Members may also elect to receive two years of free Credit Monitoring with three bureaus: Experian, Equifax, and TransUnion.

***Pro Rata* Adjustment:** Settlement Class Member Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund.

| 9. | What am I giving up to receive Settlement benefits or stay in the Settlement Class? |
|---|---|

Unless you opt out of the Settlement, you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties, including Defendant, about the legal issues in this lawsuit that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

## 10.  What are the Released Claims?

The Settlement Agreement in Section XIII describes the Released Claims and the Release, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.floridahealthsettlement.com or in the public Court records on file in this lawsuit. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed in Question 15 for free, or you can talk to your own lawyer at your own expense.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

## 11.  How do I make a Claim for Settlement benefits?

To receive any of the benefits described in Question 8, you must submit a Valid Claim, **postmarked** or submitted online by **Month Day, 2024.** Claim Forms may be submitted online at www.floridahealthsettlement.com or printed from the Settlement Website and mailed to the Settlement Administrator at the address on the Claim Form. The quickest way to submit a Claim is online. Claim Forms are also available by calling 1-XXX-XXX-XXXX or by writing to:

Florida Health Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**Claim Forms must be submitted online or by mail postmarked by Month, Day, 2024.**

## 12.  What happens if my contact information changes after I submit a Claim?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX or by writing to:

Florida Health Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

## 13.  When will I receive my Settlement benefits?

If you submit a timely and Valid Claim, payment will be made to you by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.floridahealthsettlement.com for updates.

## 14. How will I receive my payment?

If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent to the email address you provided on the Claim Form, prompting you

4884-7542-0312.1

to elect your method of payment. Several electronic payment options will be available, or you can elect a check. Please ensure you have provided a current and complete email address. If you do not provide a current and valid email address, if you do not open your email, or if your electronic payment does not go through due to wrong or incomplete information, the Settlement Administrator will attempt to send you a check relying on your physical address submitted on your Claim Form.

# THE LAWYERS REPRESENTING YOU

## 15. Do I have a lawyer in this case?

Yes, the Court has appointed Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel lawyers to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this lawsuit.

## 16. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees of up to 33.33% of the $7.8 million Settlement Fund, plus reimbursement of costs. The Court may award less than the amounts requested. If awarded by the Court, the Settlement Administrator will pay attorneys' fees and costs out of the Settlement Fund.

Class Counsel's Application for Attorneys' Fees and Costs will be made available on the Settlement Website at www.floridahealthsettlement.com before the deadline for you to object to or opt out of the Settlement.

# OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Released Parties on your own based on the legal claims raised in this lawsuit or released by the Released Claims, then you must take steps to get out of the Settlement. This is called opting out of the Settlement.

## 17. How do I opt out of the Settlement?

To opt out of the Settlement, you must timely mail written notice of a request to opt out. The written notice must be:

(1) Signed by you as a Settlement Class member;
(2) Include your name, address, telephone number and email address (if any); and
(3) Include a statement indicating your request to be excluded from the Settlement Class.

The opt out request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **Month Day, 2024**:

Florida Health Settlement Administrator
Exclusions
PO Box XXXX
Portland, OR 97XXX-XXXX

**Questions? Go to www.floridahealthsettlement.com or call 1-XXX-XXX-XXXX**

**You cannot opt out by telephone or by email.**

### 18. If I opt out can I still get anything from the Settlement?

No. If you opt out, you will not be entitled to receive any Settlement Class Member Benefits, but you will not be bound by any judgment in this case. You can only get Settlement Class Member Benefits if you stay in the Settlement and submit a Valid Claim.

### 19. If I do not opt out, can I sue Defendant for the same thing later?

No. Unless you opt out, you give up any right to sue Defendant and other Released Parties for the legal claims this Settlement resolves and Releases relating to the Data Security Incident. You must opt out of the lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Defendant or other Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs.

To object, you must file a timely, written objection stating that you object in *DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-01864 (M.D. Fla.). If your objection is submitted by mail, it must be **postmarked** by **Month Day, 2024.**

The objection must also include all the following information:

(1) Your full name, mailing address, telephone number, and email address (if any);
(2) A written statement of all grounds for the objection, accompanied by any legal support for the objection known to you or your lawyer;
(3) The number of times you have objected to a class action settlement within the five years preceding the date that you filed the objection, the caption of each case in which you have made such objection, and a copy of any orders related to or ruling upon your prior objections that were issued by trial and appellate courts in each listed case;
(4) The identity of all lawyers (if any) representing you, including any former or current lawyer(s) who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;
(5) The number of times in which your lawyer and/or your lawyer's law firm has objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which the lawyer or the firm has made such objection and a copy of any orders related to or ruling upon the lawyer's or the lawyer's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's lawyer and/or lawyer's law firm have objected to a class action settlement within the preceding five years;
(6) Any and all agreements that relate to the objection or the process of objecting–whether written or oral–between you or your lawyer and any other person or entity;
(7) The identity of all lawyers (if any) representing you who will appear at the Final Approval Hearing;
(8) A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);
(9) A statement as to whether you intend to personally appear and/or testify at the Final Approval Hearing; and

Questions? Go to www.floridahealthsettlement.com or call 1-XXX-XXX-XXXX

7

4884-7542-0312.1

(10)  Your signature (a lawyer's signature is not sufficient).

To be timely, written notice of an objection in the appropriate form must be filed with the Court by **Month Day, 2024**, with copies to the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| Clerk of Court U.S. Courthouse and Federal Building 801 North Florida Avenue Tampa, FL 33602 | Jeff Ostrow Kopelowitz Ostrow P.A. 1 West Las Olas Blvd., Ste. 500 Fort Lauderdale, FL 33301 | Casie D. Collignon Baker & Hostetler LLP 1801 California Street, Ste. 4400 Denver, CO 80202 | Florida Health Settlement Administrator Objections PO Box XXXX Portland, OR 97xxx-xxxx |

Any Settlement Class Member who fails to comply with the requirements for objecting detailed above will waive and forfeit any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the lawsuit.

## 21. What is the difference between objecting and asking to opt out?

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees and costs. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

## 22.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **Month Day, 2024, at  _:00  _.m.** before the Honorable Kathryn Kimball Mizelle at the Sam M. Gibbons U.S. Courthouse and Federal Building, 801 North Florida Avenue, Tampa, Florida, 33602 or via Zoom or by phone. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's Application for Attorneys' Fees and Costs.

If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**Note:** The date and time of the Final Approval Hearing are subject to change. The Court may also decide to hold the hearing via Zoom or by phone. Any change will be posted at www.floridahealthsettlement.com.

## 23.  Do I have to attend to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file or mail your written objection on time, the Court will consider it.

## 24.  May I speak at the Final Approval Hearing?

Yes, as long as you do not opt out, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the Final Approval Hearing, you must follow all of the procedures for objecting to the Settlement listed in Section 20 above—and specifically include a statement whether you and your lawyer will appear at the Final Approval Hearing.

# IF YOU DO NOTHING

| 25. What happens if I do nothing at all? |
|---|

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits, and you will give up rights explained in the "Opting Out of the Settlement" section of this notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties, including Defendant, about the legal issues in this lawsuit that are released by the Settlement Agreement relating to the Data Security Incident.

# GETTING MORE INFORMATION

| 26. How do I get more information? |
|---|

This notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.floridahealthsettlement.com, by calling 1-XXX-XXX-XXXX or by writing to:

Florida Health Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

4884-7542-0312.1

# EXHIBIT 3

**Must be postmarked or
submitted online NO
LATER THAN
[Claim Form Deadline]**

FLORIDA HEALTH SETTLEMENT
ADMINISTRATOR
P.O. BOX **XXXX**
PORTLAND, OR XXXXX-XXXX
**www.floridahealthsettlement.com**

---

## DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital Claim Form

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

**The easiest way to submit a Claim is online at www.floridahealthsettlement.com**, or you can complete and mail this Claim Form to the mailing address above.

**You may submit a Claim for one or more of these Settlement Class Member Benefits:**

**Cash Reimbursement.** Use Sections 3-5 of this Claim Form to request money for one or more of the following, subject to *pro rata* adjustment:

1. **Cash Payment A:**
   - **Compensation for Ordinary Losses**: You may be eligible for reimbursement up to $1,500.00 with supporting documentation showing that you incurred losses as a result of the Data Security Incident. This $1,500.00 may include compensation for lost time.
   - **Compensation for Extraordinary Losses**: For certain documented monetary losses, you may be eligible for reimbursement up to $10,000.00.
   - **Compensation for Lost Time**: You are also eligible to receive reimbursement for up to six hours of lost time spent dealing with the Data Security Incident, calculated at the rate of $30.00 per hour, for a total of $180.00. This may be combined with Compensation for Ordinary Losses, subject to the $1,500.00 cap addressed above.

   **OR**

2. **Cash Payment B:** Instead of Cash Payment A, you may elect to receive a flat payment in the amount of $150.00.

   **AND**

3. **Credit Monitoring:** Use Section 2 of this Claim Form to request two years of free credit monitoring services.

\*     \*     \*

**Claims must be submitted online or mailed and postmarked by [Claim Form Deadline]. Use the address at the top of this form for mailed claims.**

Please note: the Settlement Administrator may contact you to request additional documents to process your Claim. Cash Payments may be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund.

For more information and complete instructions visit www.floridahealthsettlement.com.

**Please note that Settlement Class Member Benefits will be distributed after the Settlement is approved by the Court and becomes final. Thank you for your patience.**

## 1. Your Information

**1. NAME (REQUIRED):**

First Name

| | | | | | | | | | | | | | | | | | | |

MI

| |

Last Name

| | | | | | | | | | | | | | | | | | |

**2. MAILING ADDRESS (REQUIRED):**

Street Address

| | | | | | | | | | | | | | | | | | | | | | | | | | | |

Apt. No.

| | | | | | | | | | | | | | | | | | | | | | | | | | | |

City

| | | | | | | | | | | | | | | | | | | | | |

State

| | |

ZIP Code

| | | | | |

**3. PHONE NUMBER:**

| | | | – | | | | – | | | | |

**4. EMAIL ADDRESS (REQUIRED):**

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

**5. UNIQUE ID:**

| | | | | | | | | | |

## 2. Credit Monitoring Services
*You may be eligible to receive free Credit Monitoring services.*

All Settlement Class members are eligible to claim two years of Credit Monitoring services.

*Please select the checkbox if you want the Credit Monitoring services for which you are eligible.*

☐  **Credit Monitoring Services:** I want to receive two years of free Credit Monitoring services.

*If you select this option, you will be sent instructions and an activation code after the Settlement is final to the email address or home address listed above. Enrollment in this service will not subject you to marketing for additional services or any required payments.*

01-CAXXXX
MOCKUP2 v.05

## 4.   Cash Payment A: Documented Ordinary Losses

Settlement Class Members who lost or spent money trying to prevent or recover from fraud or identity theft which they believe is fairly traceable to the Data Security Incident, and for which they have not been reimbursed, can receive a reimbursement for up to $1,500.00 total, including claimed lost time and out-of-pocket expenses, if any. Eligible ordinary losses include those incurred on or after May 12, 2023, up to the date of the [**Claim Form Deadline**].

In order to be properly reimbursed, it is important to send documents that show what happened and how much was lost or spent.

To look up more details about how Cash Payments work, visit www.floridahealthsettlement.com or call toll-free [**phone number**]. You will find more information about the types of costs and losses that can be paid back to you, what documents you need to attach, and how the Settlement Administrator decides whether to approve your payment. *By filling out the boxes below, you are certifying that the money you spent doesn't relate to other data breaches.*

| Loss Type and Examples of Documents | Amount and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Security Incident) |
|---|---|---|
| Costs related to credit monitoring purchases/ freezing/unfreezing between May 12, 2023, and the [**Claim Form Deadline**]. *Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM   DD   YYYY | _____ _____ _____ |
| Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information between May 12, 2023, and the [**Claim Form Deadline**] which are fairly traceable to the Data Security Incident. *Examples: Account statement with unauthorized charges circled; police report; IRS document; FTC Identity Theft Report; letter refusing to refund fraudulent charges; receipt for your credit monitoring services purchase* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM   DD   YYYY | _____ _____ _____ |
| Other expenses such as notary, fax, postage, copying, mileage, long-distance telephone charges, or professional fees related to the Data Security Incident. *Examples: Phone bills, receipts, detailed list of addresses you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM   DD   YYYY | _____ _____ _____ |

**Cash Payment A: Documented Ordinary Losses**

Settlement Class Members who lost or spent money trying to prevent or recover from fraud or identity theft which they believe is fairly traceable to the Data Security Incident and for which they have not been reimbursed can receive a reimbursement for up to $1,500.00 total, including claimed lost time and out-of-pocket expenses, if any. Eligible ordinary losses include those incurred on or after May 12, 2023, up to the date of the [**Claim Form Deadline**].

In order to be properly reimbursed, it is important to send documents that show what happened and how much was lost or spent.

To look up more details about how Cash Payments work, visit www.floridahealthsettlement.com.com or call toll-free [phone number]. You will find more information about the types of costs and losses that can be paid back to you, what documents you need to attach, and how the Settlement Administrator decides whether to approve your payment. *By filling out the boxes below, you are certifying that the money you spent doesn't relate to other data breaches.*

| Expense Types and Examples of Documents | Approximate Amount of Expense and Date | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Security Incident) |
|---|---|---|
| Unreimbursed Bank Fees. *Examples: Bank statements with fees, such as card reissuance, unreimbursed overdraft and late fees, circled* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____  _____  _____  _____ |
| Postage or Gasoline for Local Travel. *Example: Postage or gasoline receipts with charges circled* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____  _____  _____  _____ |
| Any other ordinary expense related to the Data Security Incident. *Example: Cell phone data Charges, cell phone minutes, long distance charges with proof of expense and payment* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____  _____  _____  _____ |

04-CAXXXX
MOCKUP4 v.05

**5.  Cash Payment A: Documented Extraordinary Losses**

Settlement Class Members can receive reimbursement for up to $10,000.00 for documented extraordinary losses incurred as a result of the Data Security Incident if: (1) The loss is an actual, documented, and unreimbursed monetary loss; (2) The loss was more likely than not caused by the Data Security Incident; (3) The loss occurred between May 12, 2023, and on or before the **[Claim Form Deadline]**; (4) The loss is not already covered by one or more of the ordinary loss categories; and (5) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance.

| Expense Type and Examples of Documents | Approximate Amount of Expense and Date | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Security Incident) |
|---|---|---|
| For example, professional fees incurred to address identity theft or fraud, such as falsified tax returns, account fraud, and/or medical-identity theft. | $ ⬚⬚⬚⬚.⬚⬚  Date: ⬚⬚ – ⬚⬚ – ⬚⬚⬚⬚  MM     DD        YYYY | _____ _____ _____ _____ |
| Other losses or costs resulting from identity theft or fraud (provide detailed description).  *Please provide a detailed description or a separate document submitted with this Claim Form.* | $ ⬚⬚⬚⬚.⬚⬚  Date: ⬚⬚ – ⬚⬚ – ⬚⬚⬚⬚  MM     DD        YYYY | _____ _____ _____ _____ |

**6.   Cash Payment A: Lost Time**

Settlement Class Members with time spent remedying issues related to the Data Security Incident may receive reimbursement of $30.00 per hour up to 6 hours (for a total of $180.00) with an attestation (a legal term meaning signing a formal document) including a brief description of the action(s) taken in response to the Data Security Incident. Claims made for lost time may be combined with reimbursement for ordinary losses up to a combined total of $1,500.00. Round up to the nearest hour and **check only one box.**

☐  ☐  ☐  ☐  ☐  ☐

Hour 1   Hour 2   Hour 3   Hour 4   Hour 5   Hour 6

**Description of Actions Taken:** *Please provide a brief description of the actions you took in response to the Data Security Incident during the hours claimed above.*

☐   **By checking this box, I certify that any claimed lost time was spent related to the Data Security Incident.**

**7.   Cash Payment B: Flat Payment**

Settlement Class Members who do not request compensation under Cash Payment A may elect to receive a flat payment in the amount of $150.00. You may not request both compensation under Cash Payment A and the flat payment under Cash Payment B.

☐   **I am requesting a flat payment of $150.00. I am NOT requesting reimbursement of any ordinary, extraordinary, or lost time expenses.**

**How You Will Receive Your Payment**

If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent to the email address you provided on this Claim Form, prompting you to elect your method of payment. Several electronic payment options will be available, or you can elect a check. Please ensure you have provided a current and complete email address. If you do not provide a current and valid email address, if you do not open your email, or if your electronic payment does not go through due to wrong or incomplete information, the Settlement Administrator will attempt to send you a check, relying on your physical address on file.

**7. Signature**

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my Claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my Claim is complete.

_____
**Signature**

Date: [____] – [____] – [_____]
        MM      DD        YYYY

_____
**Print Name**

08-CAXXXX
MOCKUP8 v.05